2023-1532, 2023-1534

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,

*Defendant – Appellant*

UNITED STATES and ENDURA PRODUCTS, INC.,

*Defendants*

v.

WORLDWIDE DOOR COMPONENTS, INC., and
COLUMBIA ALUMINUM PRODUCTS, LLC,

*Plaintiff – Appellees*

Consolidated Appeals from the United States Court of International Trade in
Case Nos. 1:19-CV-00012 and 1:19-CV-00013, Judge Timothy C. Stanceu

**OPENING BRIEF OF DEFENDANT-APPELLANT
ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE**

Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Enbar Toledano, Esq.
Elizabeth S. Lee, Esq.

**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
202-719-7000

*Counsel to the Aluminum Extrusions
Fair Trade Committee*

Dated: June 29, 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2023-1532 |
| **Short Case Caption** | Worldwide Door Components, Inc. v. US |
| **Filing Party/Entity** | Aluminum Extrusions Fair Trade Committee - Defendant-Appellant |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 03/09/2023

Signature: /s/ Robert E. DeFrancesco, III

Name: Robert E. DeFrancesco, III

**FORM 9. Certificate of Interest**

| 1. **Represented Entities.** Fed. Cir. R. 47.4(a)(1). | 2. **Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | 3. **Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☐ None/Not Applicable |
| Aluminum Extrusions Fair Trade Committee  whose individual members are detailed on the attached form. |  | See attachment. |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

☑     Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐  None/Not Applicable        ☐  Additional pages attached

| | | |
|---|---|---|
| Claire M. Webster | | |
| Cynthia C. Galvez | | |
| Elizabeth V. Baltzan | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑  Yes (file separate notice; see below)    ☐  No    ☐  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable        ☐  Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

Save for Filing

## 1. Represented Entities

The individual members of the Aluminum Extrusions Fair Trade Committee (the "Committee") are as follows: Alexandria Extrusion Company; William L. Bonnell Company, Inc. ("Bonnell"); Extrusion North America at Hydro; Kaiser Aluminum Corporation; Merit Aluminum; and Western Extrusions Corporation. The Committee notes that Bonnell acquired original petitioning member Futura Industries Corporation ("Futura") in early 2017, and Futura is now a wholly-owned subsidiary of Bonnell. In addition, in October 2017, Norsk Hydro ASA acquired Orkla ASA's 50% ownership in Sapa AS, giving Norsk Hydro ASA full ownership of Sapa AS. Sapa AS changed its name to Hydro Extruded Solutions AS and is now a business unit within Norsk Hydro ASA called Extruded Solutions. Further, Benada Aluminum of Florida, Inc., while an original member of the petitioning Committee, has left the Aluminum Extruders Council and is no longer a member of the Committee. Astro Shapes, LLC purchased original petitioning member Aerolite Extrusion Company but has since left the Committee. Original petitioning member Frontier Aluminum Corporation changed its name to Merit Aluminum but remains the same corporate entity.

## 3. Parent Corporations and Stockholders

Futura is a wholly-owned subsidiary of Bonnell, and Bonnell is a wholly-owned subsidiary of Tredegar Corporation. The following publicly-traded companies owns 10% or more of the shares in Tredegar Corporation: BlackRock, Inc. and GAMCO Investors, Inc.

Extrusion North America at Hydro is a wholly-owned subsidiary of Norsk Hydro ASA.

The following publicly-traded company owns 10% or more of the shares in Kaiser Aluminum Corporation: BlackRock, Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2023-1534

**Short Case Caption** Columbia Aluminum Products, LLC v. US

**Filing Party/Entity** Aluminum Extrusions Fair Trade Committee - Defendant-Appellant

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 03/09/2023

Signature: /s/ Robert E. DeFrancesco, III

Name: Robert E. DeFrancesco, III

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Aluminum Extrusions Fair Trade Committee<br>whose individual members are detailed on the attached form. | | See attachment. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☑  Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| Claire M. Webster | | |
| Cynthia C. Galvez | | |
| Elizabeth V. Baltzan | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑  Yes (file separate notice; see below)    ☐  No    ☐  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

Save for Filing

## 1. Represented Entities

The individual members of the Aluminum Extrusions Fair Trade Committee (the "Committee") are as follows: Alexandria Extrusion Company; William L. Bonnell Company, Inc. ("Bonnell"); Extrusion North America at Hydro; Kaiser Aluminum Corporation; Merit Aluminum; and Western Extrusions Corporation. The Committee notes that Bonnell acquired original petitioning member Futura Industries Corporation ("Futura") in early 2017, and Futura is now a wholly-owned subsidiary of Bonnell. In addition, in October 2017, Norsk Hydro ASA acquired Orkla ASA's 50% ownership in Sapa AS, giving Norsk Hydro ASA full ownership of Sapa AS. Sapa AS changed its name to Hydro Extruded Solutions AS and is now a business unit within Norsk Hydro ASA called Extruded Solutions. Further, Benada Aluminum of Florida, Inc., while an original member of the petitioning Committee, has left the Aluminum Extruders Council and is no longer a member of the Committee. Astro Shapes, LLC purchased original petitioning member Aerolite Extrusion Company but has since left the Committee. Original petitioning member Frontier Aluminum Corporation changed its name to Merit Aluminum but remains the same corporate entity.

## 3. Parent Corporations and Stockholders

Futura is a wholly-owned subsidiary of Bonnell, and Bonnell is a wholly-owned subsidiary of Tredegar Corporation. The following publicly-traded companies owns 10% or more of the shares in Tredegar Corporation: BlackRock, Inc. and GAMCO Investors, Inc.

Extrusion North America at Hydro is a wholly-owned subsidiary of Norsk Hydro ASA.

The following publicly-traded company owns 10% or more of the shares in Kaiser Aluminum Corporation: BlackRock, Inc.

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ..........................................................................1

II.    STATEMENT OF RELATED CASES ...........................................1

III.   JURISDICTIONAL STATEMENT ................................................1

IV.   STATEMENT OF THE ISSUES ...................................................2

V.    STATEMENT OF THE CASE ......................................................2

VI.   STATEMENT OF FACTS .............................................................2

      A.     The Scope of the Relevant Orders.........................................2

      B.     Commerce Determines That The Extruded Aluminum in Appellees' Door Thresholds Is Covered by the Scope ........................4

      C.     The CIT Repeatedly Remands Commerce's Scope Ruling Until the Agency Adopts the CIT's Interpretation.............................9

          1.     The CIT's First Remand Order ..................................9

          2.     The CIT's Second Remand Order..............................10

          3.     The CIT's Third Remand Order ................................13

          4.     The CIT's Fourth and Final Order ............................15

VII.   SUMMARY OF ARGUMENT ....................................................16

VIII.   ARGUMENT.............................................................................18

      A.     Standard of Review ............................................................18

      B.     Commerce Correctly Determined Appellees' Door Thresholds Are Covered By the Scope's General Description ........................................................................19

C.     Commerce Correctly Determined Appellees' Door
       Thresholds Are Subassemblies................................................24

IX.   CONCLUSION.................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Appleton Papers Inc. v. United States*,
    929 F. Supp. 2d 1329 (Ct. Int'l Trade 2013) ......................................................23

*China Custom Mfg. Inc. v. United States*,
    61 F.4th 956 (Fed. Cir. 2023) .............................................................*passim*

*Medline Indus., Inc. v. United States*,
    961 F. Supp. 2d 1287 (Ct. Int'l Trade 2014) ......................................................23

*Meridian Prods., LLC v. United States*,
    125 F. Supp. 3d 1306 (Ct. Int'l Trade 2015) ......................................................20

*Meridian Prods., LLC v. United States*,
    890 F.3d 1272 (Fed. Cir. 2018) ...........................................................*passim*

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*,
    776 F.3d 1351 (Fed. Cir. 2015) ...........................................................*passim*

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*,
    961 F. Supp. 2d 1291 (Ct. Int'l Trade 2014) ................................................21, 22

*Whirlpool Corp. v. United States*,
    890 F.3d 1302 (Fed. Cir. 2018) ...........................................................*passim*

**Statutes**

28 U.S.C. § 1295(a)(5) ..................................................................................2

28 U.S.C. § 1581(c) .....................................................................................2

**Regulations**

19 C.F.R. § 351.225(k)(1) ..........................................................................6, 7

19 C.F.R. § 351.225(k)(2) ............................................................................6

## I.     <u>INTRODUCTION</u>

On behalf of Defendant-Appellant the Aluminum Extrusions Fair Trade Committee ("AEFTC"), we respectfully submit this opening brief in support of AEFTC's appeals from the determinations of the U.S. Court of International Trade ("CIT") in *Worldwide Door Components, Inc. v. United States*, Ct. No. 19-012, slip ops. 20-128 (Aug. 27, 2020), Appx1–17, 21-115 (Sept. 14, 2021), Appx19–44, 22-091 (Aug. 10, 2022), Appx45–67, and 22-143 (Dec. 16, 2022), Appx68–84, and *Columbia Aluminum Products, LLC v. United States*, Ct. No. 19-013, slip ops. 20-129 (Aug. 27, 2020), Appx87–103, 21-116 (Sept. 14, 2021), Appx104–127, 22-092 (Aug. 10, 2022), Appx128–150, and 22-144 (Dec. 16, 2022), Appx151–168.

Pursuant to this Court's Order dated May 30, 2023, these appeals have been consolidated, and the parties have been directed to submit one set of briefing for the two appeals.  *See* Case No. 23-1532, Order (May 30, 2023), ECF No. 15.

## II.     <u>STATEMENT OF RELATED CASES</u>

Counsel for AEFTC is unaware of any other appeal from the same civil actions that has previously been before this or any other appellate court.  Counsel for AEFTC is not currently aware of any other case that would be affected by the Court's decision in this appeal.

## III.     <u>JURISDICTIONAL STATEMENT</u>

This is an appeal from the final judgments of the CIT in *Worldwide Door Components, Inc. v. United States* and *Columbia Aluminum Products, LLC v. United*

*States*, each entered on December 16, 2022.  Appx85–86; Appx169–170.  The CIT

exercised jurisdiction pursuant to 28 U.S.C. § 1581(c).  On February 14, 2023,

within sixty days of the CIT's final judgments, AEFTC timely filed its notices of

appeal pursuant to Federal Circuit Rule 4.  This Court's jurisdictional grant to review

the CIT's final judgments is provided in 28 U.S.C. § 1295(a)(5).

## IV.    STATEMENT OF THE ISSUES

This appeal raises the following issue:

1.    Whether the CIT erred in remanding the U.S. Department of

Commerce's ("Commerce") determination that Appellees' door thresholds are

within the scope of the antidumping and countervailing duty orders on *Aluminum

Extrusions from the People's Republic of China* (the "Orders"), where Commerce's

determination was in accordance with law, supported by substantial evidence, and

otherwise reasonable and lawful.

## V.    STATEMENT OF THE CASE

AEFTC challenges the CIT's decisions remanding Commerce's reasonable

and lawful determination that Appellees' door thresholds are within the scope of the

Orders.

## VI.    STATEMENT OF FACTS

### A.    The Scope of the Relevant Orders

In May 2011, Commerce issued the antidumping and countervailing duty

Orders on aluminum extrusions from China.  Appx201–203; Appx204–207.  The

2

scope of the Orders covers "aluminum extrusions which are shapes and forms, produced by an extrusion process, made from aluminum alloys . . . commencing with the numbers 1, 3, and 6{.}"[1]  Appx201.  Two categories of products are identified as in-scope: (1) parts for final finished products that are assembled after importation, and (2) products identified by their end use, including door thresholds specifically:

> {1} Subject aluminum extrusions may be described at the time of importation as parts for final finished products that are assembled after importation, including, but not limited to, windows frames, door frames, solar panels, curtain walls, or furniture.  Such parts that otherwise meet the definition of aluminum extrusions are included in the scope.
>
> . . .
>
> {2} Subject extrusions may be identified with reference to their end use, such as fence posts, electrical conduits, door thresholds, carpet trim, or heat sinks (that do not meet the finished heat sink exclusionary language below).  Such goods are subject merchandise if they otherwise meet the scope definition, regardless of whether they are ready for use at the time of importation.

Appx201–202.[2]

The scope clarifies that, where aluminum extrusion components are attached to non-aluminum extrusion components to form subassemblies, "*i.e.*, partially assembled merchandise," only the aluminum extrusion components are covered by

---

[1]     Because both Orders recite the same scope language, for ease of reference, this Brief will cite the scope language in the Antidumping Duty Order alone.

[2]     Unless otherwise noted, all emphasis in this Brief has been added, and all internal quotations, citations, and alterations have been omitted.

the Orders.  Appx202.  On the other hand, where aluminum extrusion components are attached to non-aluminum extrusion components to form finished merchandise, the entirety of the finished merchandise is excluded.  *Id.* ("The scope also excludes finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels.").  Thus, the scope distinguishes between two types of assemblies, meaning products containing both aluminum extrusions and non-aluminum extrusion parts: subassemblies, which are subject to the Orders,[3] and finished merchandise, which is not.

### B.    Commerce Determines That The Extruded Aluminum in Appellees' Door Thresholds Is Covered by the Scope

On August 3, 2017, Appellee Worldwide Door Components, Inc. ("Worldwide") submitted a scope ruling request to Commerce seeking a determination that its door thresholds are not subject to the Orders.  Appx969.[4]  A

---

[3]    Subassemblies that are imported as parts of a finished goods kit are excluded from the Orders.  Appx202.  But that is the only circumstance in which subassemblies are out-of-scope.  *See China Custom Mfg. Inc. v. United States*, 61 F.4th 956, 960 (Fed. Cir. 2023) ("{S}ubassemblies may be excluded from the Orders' scope only if they are imported as part of a finished goods kit{.}").  Because it is undisputed that Appellees' door thresholds are not imported as finished goods kits, for simplicity's sake, this Brief will refer to subassemblies as in-scope merchandise.

[4]    Commerce's original scope ruling can also be located at Appx2326–2363 in the Columbia portion of the Appendix.

door threshold is the bottom piece of an exterior door frame that a person walks over to cross the threshold of a building. Appx2211; *see also* Appx1001 (noting door thresholds can also be used indoors between rooms with different types of floors). Worldwide argued that its door thresholds are exempt from the Orders under the finished merchandise exclusion because they (1) are assemblies, containing both extruded aluminum components and non-aluminum components, Appx976, and (2) are imported fully assembled and ready "for installation within a door frame, or residential or commercial building, without requiring any further finishing or fabrication." Appx988.

On March 14, 2018, Appellee Columbia Aluminum Products, LLC ("Columbia") submitted a scope ruling request regarding its own door thresholds. Appx969. Columbia's door thresholds are likewise composed of both extruded aluminum components and non-aluminum components. Appx982. And Columbia likewise argued that its door thresholds are exempt from the Orders under the finished merchandise exclusion. Appx996 (noting Columbia's argument that its door thresholds are likewise "ready for use at the time of import and require no further processing or manufacturing").

On December 19, 2018, Commerce resolved both scope ruling requests in a single determination. Appx969. Pursuant to 19 C.F.R. § 351.225(k)(1),[5] Commerce determined that Appellees' door thresholds are covered by the scope of the Orders for multiple reasons.

First, Appellees' door thresholds are "parts for final finished products." Appx1001. Specifically, Commerce found that Appellees' door thresholds "may be described as . . . parts for doors, which are assembled after importation (with additional components) to create the final finished product{.}" *Id.* Appellees' door thresholds "otherwise meet the definition of aluminum extrusions" because they are made with 6000 series extruded aluminum. *Id.*; *cf.* Appx973 (listing the series of aluminum alloys that comprise subject extrusions).

---

[5]     Commerce's interpretive framework is not specifically at issue here. But for context, this Court laid out Commerce's framework for interpreting the scope of orders in *Whirlpool Corp. v. United States*, 890 F.3d 1302, 1308 (Fed. Cir. 2018):

> First, under § 351.225(k)(1), Commerce must consider the scope language contained in the order, the descriptions contained in the petition, and how the scope was defined in the investigation and in the determinations issued by Commerce and the ITC. If Commerce concludes the product is, or is not, included within the scope of the order, Commerce issues a final scope ruling. If a § 351.225(k)(1) analysis is not dispositive, however, then Commerce proceeds to an analysis . . . under subsection (k)(2) of its regulation.

Commerce's (k)(2) factors include (i) the physical characteristics of the product; (ii) the expectations of the ultimate purchasers; (iii) the ultimate use of the product; (iv) the channels of trade in which the product is sold; and (v) the manner in which the product is advertised and displayed. 19 C.F.R. § 351.225(k)(2).

Second, Appellees' door thresholds are subassemblies.    Appx1002. Specifically, Appellees' door thresholds are assemblies containing "aluminum extrusion components attached to non-aluminum extrusion components," and they are later assembled with additional products to create finished doors.  Appx1001– 1002.  Accordingly, Commerce explained that the aluminum extrusion components in Appellees' door thresholds are subject to the Orders, whereas the non-aluminum components are not.  Appx1002.

Third, and most fundamentally, door thresholds are expressly included in the scope by name.  *Id.*  As noted above, the scope provides that subject extrusions "may be identified with reference to their end use," including "door thresholds" specifically.  *Id.*  "Such goods are subject merchandise if they otherwise meet the scope definition, regardless of whether they are ready for use at the time of importation."  *Id.*  Because Appellees' door thresholds otherwise meet the scope definition—*i.e.*, are made with 6000 series extruded aluminum—Commerce confirmed they are expressly covered by the scope's plain language.  *Id.*

Fourth, in addition to the scope itself, Commerce determined that the sources described in 19 C.F.R. § 351.225(k)(1) further support inclusion of Appellees' door thresholds in the Orders.  In particular, Commerce observed that door thresholds

7

were "expressly" and repeatedly included in the original investigations.[6]
Appx1002–1003 (noting that the original petition identified "door thresholds" as
subject extrusions, explained that aluminum extrusions "serve in a wide variety of
applications" including "door frames," "sills," and "thresholds," and listed "door
thresholds" as "one of the specifically enumerated examples of Subject
Merchandise").

Based on the foregoing, Commerce rejected Appellees' contentions that their
door thresholds are excludable from the Orders as finished merchandise.  To begin
with, Commerce found that the scope's express inclusion of door thresholds as an
example of subject merchandise forecloses application of the finished merchandise
exclusion.  Appx1003–1004 (citing *Shenyang Yuanda Aluminum Indus. Eng'g Co.
v. United States*, 776 F.3d 1351, 1359 (Fed. Cir. 2015) for the proposition that, where
"the scope language explicitly includes the product in question," Commerce
appropriately considers that product in-scope).  After all, if door thresholds were
excludable as finished merchandise, their express inclusion in the scope would be
rendered "meaningless."  Appx1004.  Furthermore, and in any event, Commerce

---

[6]    Indeed, in the original investigation, Columbia asked the International Trade
Commission ("ITC") to exclude its door thresholds—"comprised of plastic,"
"PVC," "composite materials" and "aluminum"—from the investigation.
Appx2253.  But the scope of the investigations continued to include door thresholds,
without distinguishing between different types of thresholds.  Appx2165.  Thus, in
addition to the petitioners, Appellees and the ITC likewise understood that door
thresholds, including door threshold assemblies, are covered by the scope.

reiterated that door thresholds are not finished merchandise, but rather subassemblies and parts for a final finished door. *Id.*; *accord Shenyang Yuanda*, 776 F.3d at 1358 ("A part or subassembly . . . cannot be a finished product.").

## C.    The CIT Repeatedly Remands Commerce's Scope Ruling Until the Agency Adopts the CIT's Interpretation

Columbia and Worldwide appealed Commerce's scope ruling to the CIT.  On appeal, the CIT held that Commerce "misinterpreted" the language of the scope and, consequently, "erred" in finding Appellees' door thresholds covered by the Orders. Appx7–8; Appx91–93.  The CIT's holding rested on the mistaken belief that only products made <u>entirely</u> of aluminum extrusions are covered by the scope's general language.  Based on that belief—which is not supported by the scope, which affords Commerce no deference at all in interpreting its own Orders, and which has already been rejected by this Court, *see Whirlpool Corp.*, 890 F.3d at 1309—the CIT remanded repeatedly until Commerce adopted the lower court's scope interpretation under protest.

### 1.    The CIT's First Remand Order

In its First Remand Orders, the CIT found that Commerce erred in finding Appellees' door thresholds covered by the Orders as either parts for final finished goods or end-use products specifically identified by name.  *See* Appx5–9; Appx91–95.  The court observed that both of the scope's relevant provisions describe subject "extrusions."  Appx6; Appx92 ("Subject aluminum extrusions may be described at

the time of importation as parts for final finished products . . .”); Appx8; Appx94 ("Subject extrusions may be identified with reference to their end use . . ."). Because Appellees' door thresholds are "assemblies" containing both aluminum extrusions and other components, the CIT held that the scope's general language cannot apply. Appx5–9; Appx91–95 ("{Worldwide's/Columbia's} door thresholds are not 'extrusions' . . . . Instead, they are goods assembled from multiple components, only one of which has been fabricated from an aluminum extrusion."). The CIT did not address the scope's express application to subassemblies. *See* Appx974. Nor did the CIT address this Court's prior recognition that "the general scope language unambiguously includes aluminum extrusions that are part of an assembly." *Whirlpool Corp.*, 890 F.3d at 1309.

Because the CIT did not believe that the general scope language extends to assembled door thresholds, it found that Commerce erred in declining to consider the finished merchandise exclusion. Appx9–12; Appx95–98. The CIT remanded with instructions to consider that exclusion. Appx16; Appx102.

### 2.    The CIT's Second Remand Order

On remand, Commerce continued to find that Appellees' door thresholds are subject merchandise. At the outset, Commerce observed that the CIT's First Remand Orders were directly in conflict with this Court's holdings—including specific reversals of the same CIT judge for imposing the same faulty scope

interpretation. *See* Appx1446–1448; Appx2795–2797; *Whirlpool Corp.*, 890 F.3d at 1309 (rejecting CIT's conclusion "that the general scope language is not reasonably interpreted to include the assembled handles because the handles at issue are not themselves 'extrusions' but rather are assemblies"); *Meridian Prods., LLC v. United States*, 890 F.3d 1272, 1280 (Fed. Cir. 2018) ("The CIT improperly narrowed the scope of the antidumping duty order by finding that the Type B handles are 'assemblies' that are not covered by the general scope description.").

Nevertheless, consistent with the First Remand Orders, and under protest, Commerce did not continue to consider whether Appellees' door thresholds are covered by the scope as parts for final finished goods or with reference to their end use.  Appx1450; Appx2799.  Commerce did continue to find, however, that Appellees' door thresholds are subassemblies and thus ineligible for the finished merchandise exclusion.  Appx1451, Appx1458; Appx2800, Appx2807.  Commerce explained that a subassembly is an "intermediate product or any other partially assembled product that is something less than the full, permanent, and completed final finished product that would satisfy the finished merchandise exclusion." Appx1453; Appx2802.  As noted above, a subassembly is covered by the Orders whereas finished merchandise is not.

Commerce explained that Appellees' door thresholds are subassemblies, and not finished merchandise, because they are intermediate products that "must work

11

in tandem with other components to be functional." Appx1460; Appx2808. Put differently, Commerce determined that door thresholds are subassemblies because they are "designed for the sole purpose of becoming part of a larger whole." Appx1460; Appx2809; *cf. Shenyang Yuanda*, 776 F.3d at 1358 (affirming determination that curtain wall units were subassemblies, and thus ineligible for the finished merchandise exclusion, because an individual curtain wall unit "has no consumptive or practical use"). Commerce thus continued to find that Appellees' door thresholds are covered by the Orders.

The CIT remanded again. This time, the court found that substantial evidence did not support Commerce's determination that door thresholds are subassemblies because record evidence suggested they are "fully assembled at the time of entry" and ready for installation "without any further finishing or fabrication." Appx37–38; *see also* Appx120 (finding no evidence that Columbia's door thresholds "require cutting or machining prior to incorporation into a door frame or other structure"). The CIT did not address the crux of Commerce's remand redetermination, which was that—whether assembled or not—Appellees' door thresholds are intermediate products and not final, finished goods. *See* Appx1454; Appx2803 ("{T}he fact that the subassembly . . . requires no further fabrication or assembly to perform its function as a subassembly{} does not mean that it will constitute finished merchandise{.}"); *accord China Custom Mfg.*, 61 F.4th at 962 (confirming

subassemblies are covered by the Orders even if "fully and permanently assembled and completed at the time of importation"; "The Orders exclude finished merchandise <u>containing</u> aluminum extrusions as parts that are fully and permanently assembled, not the parts themselves." (emphasis in original)).

Furthermore, the CIT remanded with instructions to consider the finished merchandise exclusion <u>regardless</u> of whether Appellees' door thresholds are only subassemblies. In the lower court's view, this Court's holdings in *Meridian Products* and *Whirlpool Corporation* "do not support {Commerce's} position that it need not consider the finished merchandise exclusion if it deems the good at issue to be a subassembly." Appx36; Appx115 (same). This Court has since firmly foreclosed that proposition, making clear that "parts or subassemblies are not finished products and thus <u>cannot</u> qualify for the finished merchandise exclusion{.}" *China Custom Mfg. Inc.*, 61 F.4th at 960.

### 3.    The CIT's Third Remand Order

On second remand, under continued protest, Commerce altered its determination and found that Appellees' door thresholds are not subassemblies and do qualify for the finished merchandise exclusion. Appx1599; Appx2942. The agency prefaced its analysis, however, by respectfully disagreeing with the CIT.

<u>First</u>, Commerce noted that the CIT's Second Remand Order did not address the actual basis for its determination that Appellees' door thresholds are

subassemblies. *See* Appx1602–1603 ("The central question Commerce analyzed was not whether record evidence indicates the door thresholds themselves may undergo further cutting or fabrication, but whether they are intermediate products that require further incorporation of other components to form a downstream finished product."); *see also* Appx2946 (same). Second, Commerce reiterated that a subassembly definitionally cannot qualify for the finished merchandise exclusion. Appx1603; Appx2946. Third, Commerce argued that, on its face, the scope supports a determination that door thresholds are in-scope and not finished merchandise because (i) door thresholds are specifically identified as in-scope, whereas (ii) the scope's examples of finished merchandise include more complete, independent products like "doors with glass or vinyl." Appx1603–1604; Appx2946–2947. Nevertheless, in light of the Second Remand Order, Commerce concluded under protest that Appellees' door thresholds are excluded from the Orders as finished merchandise. Appx1604; Appx2947.

For reasons both substantive and procedural, the CIT remanded again. Substantively, the CIT took issue with Commerce's failure to support its ultimate conclusion that Appellees' door thresholds are finished merchandise, other than to cite the CIT's Second Remand Order. *See* Appx62; Appx145 ("Commerce devoted most of the substantive discussion in the Second Remand Redetermination to its disagreements with certain of the issues the court decided previously.").

Procedurally, the CIT doubted that the Second Remand Redetermination was a final appealable order because the final sentence read, "Should the court sustain these Final Results of Redetermination, we will issue a revised scope ruling accordingly." Appx60; Appx143.   The CIT thus remanded with instructions to issue a final determination supported by further explanation.  Appx66 and Appx149.

### 4.    The CIT's Fourth and Final Order

In its third and final remand redetermination, Commerce determined, again under protest, that Appellees' door thresholds are finished merchandise.  Appx1710; Appx3032.  In support, Commerce explained that Appellees' door thresholds are assemblies containing both aluminum extrusions and other components, as they must to constitute finished merchandise.  Appx1710–1711; Appx3033.  And with regard to the requirement that finished merchandise be "fully and permanently assembled and completed at the time of entry," Commerce acknowledged (i) Appellees' representations that their door thresholds are fully assembled and ready for use at the time of entry and (ii) the Court's rejection of Commerce's prior determinations to the contrary.  Appx1711–1712; Appx3033–3034.  Accordingly, Commerce determined under protest that Appellees' door thresholds are imported as finished merchandise.  Appx1712; Appx3034.

This time, the CIT sustained Commerce's redetermination for all the reasons it had previously provided.  <u>First</u>, the CIT repeated its belief that "the express

reference in the scope language to 'door thresholds' as an exemplar refers to door thresholds that are aluminum extrusions, not assemblies," Appx82; Appx166—despite numerous binding precedents to the contrary.  <u>Second</u>, the CIT again rejected Commerce's "reasoning that subassemblies cannot qualify for the finished merchandise exclusion," Appx82; Appx166–167—which, again, has been conclusively resolved in Commerce's favor.  <u>Third</u>, the CIT reiterated its belief that the "record does not support the conclusion that {Appellees}' door thresholds require cutting or fabrication after importation into the United States," Appx83, Appx167—even though this was not the basis for Commerce's determination that they are subassemblies.  As a result, the CIT sustained the Third Remand Redetermination.

AEFTC now appeals from the CIT's holdings.

## VII.  <u>SUMMARY OF ARGUMENT</u>

In light of this Court's precedents, the scope's plain language, and the "substantial deference" afforded to Commerce's interpretations of its own orders, *Whirlpool Corp.*, 890 F.3d at 1308, Commerce's original determination that Appellees' door thresholds are subject to the Orders should be sustained.

<u>First</u>, Commerce correctly determined that Appellees' door thresholds are "parts for final finished products" and expressly covered by the scope with reference to their end use.  *See* Appx974.  Both Commerce and this Court have repeatedly

16

recognized that the scope's descriptions of subject "extrusions" include aluminum extrusions that are incorporated into assemblies. Judge Stanceu's unwavering stance that only products made <u>entirely</u> of aluminum extrusions are subject to the Orders, and continued imposition of that reading over Commerce's reasonable and lawful interpretation of its own scope, are thus improper.

<u>Second</u>, and in any event, Commerce correctly determined that Appellees' door thresholds are subassemblies, which are definitionally ineligible for the scope's finished merchandise exclusion. The Orders' "subassembly" provision has been the subject of considerable litigation and subsequent refinement by Commerce. At this juncture, it is beyond question that an assembly that is only one piece of a downstream finished product is a subassembly, and that subassemblies <u>cannot</u> qualify for the finished merchandise exclusion. Because Commerce reasonably determined that Appellees' door thresholds are subassemblies, the CIT's remand instructions to consider the finished merchandise exclusion were contrary to law.

## VIII. <u>ARGUMENT</u>

### A.    <u>Standard of Review</u>

This Court "review{s} the trial court's decisions de novo and appl{ies} the same standard" that the trial court applied below. *China Custom Mfg.*, 61 F.4th at 961. "Under that standard, {the Court} uphold{s} a Commerce scope ruling that is supported by substantial evidence on the record and otherwise in accordance with law." *Whirlpool Corp.*, 890 F.3d at 1307.

A reviewing court <u>does not</u> interpret scope language for itself in the first instance. *See, e.g.*, *Meridian Prods.*, 890 F.3d at 1281 ("That the CIT arrived at conclusions different from Commerce's factual findings is immaterial to the extent that Commerce's original scope ruling is reasonable and supported by substantial evidence."). Instead, the Court "grants <u>significant deference</u> to Commerce's own interpretation of scope orders." *Shenyang Yuanda*, 776 F.3d at 1354; *accord China Custom Mfg.*, 61 F.4th at 961 ("We also give substantial deference to Commerce's interpretation of its own duty orders . . . ."); *Meridian Prods.*, 890 F.3d at 1281 (reversing CIT's rejection of scope ruling where "the CIT gave insufficient deference to Commerce's interpretation"). "This deference is appropriate because the meaning and scope of orders are issues particularly within the expertise and special competence of Commerce." *Shenyang Yuanda*, 776 F.3d at 1354.

**B.**    <u>**Commerce Correctly Determined Appellees' Door Thresholds Are Covered By the Scope's General Description**</u>

Commerce reasonably and correctly determined that the general scope language, relating to "parts for final finished products" and products "identified with reference to their end use," encompasses Appellees' door thresholds. There is no real dispute that a door threshold is a part for a final door frame or door. *See, e.g.*, Appx988 ("Worldwide states that, upon entry, its products contain all the necessary components for installation within a door frame, or residential or commercial building . . . ."); Appx2334 (arguing that, upon entry, Columbia's door thresholds are ready for assembly "into a door unit"); *see also* Appx974 (describing subject extrusions as "parts for final finished products that are assembled after importation, including" parts for "door frames" specifically). Nor can there be any dispute that door thresholds are expressly identified as in-scope merchandise by name. Appx974 ("Subject extrusions may be identified with reference to their end use, such as . . . door thresholds . . . ."). Thus, the propriety of the CIT's remand orders turns on whether these provisions in the general scope language refer only to products made entirely of aluminum extrusions, as the CIT contends, or also to assemblies. *See* Appx5–9; Appx91–95. This Court has already resolved that question in Commerce's favor and confirmed that the general scope language covers assemblies.

In *Meridian Products*, the Court considered a scope ruling related to kitchen appliance handles packaged with plastic fasteners. 890 F.3d at 1275. Commerce

determined the handles were in-scope because "the Type B handles are aluminum extrusions that are identified by reference to their end use, and the handles otherwise meet the scope definition." *Id.* at 1280.  Judge Stanceu reversed, finding that the handles "are assemblies not within the scope." *Id.* at 1276.  As he did in this proceeding, Judge Stanceu reasoned that "the subject merchandise is 'aluminum extrusions,'" and the scope's provisions "addressing an 'extrusion'" do not extend to "a good which, when imported, is an assembled good containing an extrusion." *Meridian Prods., LLC v. United States*, 125 F. Supp. 3d 1306, 1312–13 (Ct. Int'l Trade 2015).  This Court reversed, finding that Judge Stanceu "failed to give deference to Commerce's interpretation and fact finding," "impermissibly substituted {his} judgment for that of Commerce," and "improperly narrowed the scope of the {Orders} by finding that the Type B handles are assemblies that are not covered by the general scope description." *Meridian Prods.*, 890 F.3d at 1278, 1280.

    *Whirlpool Corporation* reiterated the point.  There, the Court considered a scope ruling related to kitchen appliance handles that everyone agreed were assemblies.  *See Whirlpool Corp.*, 890 F.3d at 1306.  Commerce found that the assembled handles did not qualify as finished merchandise and thus were covered by the scope.  *Id.*  But Judge Stanceu once again remanded.  As he did in *Meridian Products* and in this proceeding, Judge Stanceu reasoned that "the general scope language of the Orders could not be reasonably interpreted to include Whirlpool's

20

assembled handles," *id.* at 1307, because "the handles at issue are not themselves 'extrusions' but rather are assemblies," *id.* at 1309. This Court found his conclusion "incorrect" and confirmed that the "general scope language unambiguously includes aluminum extrusions that are part of an assembly." *Id.*[7]

This Court has also confirmed that assemblies are included in the scope's illustrative provisions describing subject "extrusions." In *Shenyang Yuanda*, Commerce considered a scope ruling related to curtain wall units, which are the individual assemblies that interlock to create a curtain wall.[8] *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 961 F. Supp. 2d 1291, 1294 (Ct. Int'l Trade 2014). Commerce determined, and the CIT agreed, that curtain wall units are "parts for" curtain walls and thus expressly covered by the scope:

> The relevant {scope} language provides that "subject aluminum extrusions may be described at the time of importation as <u>parts for</u> final finished products that are assembled after importation, including, but not limited to . . . <u>curtain walls</u>."
>
> . . . As the above-quoted language demonstrates, parts for curtain walls are expressly included within the scope of the Orders.

---

[7]    *Meridian Products* and *Whirlpool Corporation* involved further questions regarding application of the scope's exclusions to aluminum extrusions imported together with fasteners. Those issues, and corresponding discussions in each opinion, are not relevant here because there is no dispute that the non-extrusion components in Appellees' door thresholds are more than fasteners.

[8]    A curtain wall is a non-structural outer wall of a building that is typically composed of aluminum extrusions and glass. A curtain wall system is made of individual curtain wall units that are designed to fit together.

*Id.* at 1296–97 (emphasis in original).  Importantly, Commerce and the CIT came to that conclusion even though curtain wall units are assemblies, made of aluminum extrusion frames filled with glass.  *See id*. at 1297.

On appeal to this Court, the appellant producer argued that the scope covers "aluminum extrusions," whereas "curtain wall units are different from the aluminum extrusions used to make their frame"—mirroring Judge Stanceu's interpretation of the general scope language here.  *Shenyang Yuanda*, 776 F.3d at 1356.  This Court disagreed.  Highlighting "the Orders' <u>explicit inclusion</u> of parts for curtain walls," the Court found "no flaw in Commerce's determination that Yuanda's curtain wall parts are within the plain language of the Orders"—despite the fact that those curtain wall parts were assemblies.  *Id.* at 1357.

These binding precedents confirm that assemblies are covered by the Orders' general scope description, including the provisions describing subject "extrusions." Judge Stanceu's contrary interpretation of the scope, as applying only to products made entirely of aluminum, has been rejected by this Court and is thus foreclosed. But even if that were not the case, Judge Stanceu's failure to defer at all to Commerce's reasonable interpretation of its own Orders, and continued imposition of his own interpretation, would require reversal.  As noted above, Commerce's scope determinations are afforded "substantial deference" because "the meaning and scope of antidumping orders are issues particularly within the expertise and special

competence of Commerce." *Meridian Prods.*, 890 F.3d at 1281.  Accordingly, scope determinations are not subject to *de novo* review or to the CIT's <u>preferred</u> interpretation in the first instance.  Instead, a scope determination must be upheld if it is reasonable.  *Id.* ("That the CIT arrived at conclusions different from Commerce's factual findings is immaterial to the extent that Commerce's original scope ruling is reasonable and supported by substantial evidence.").

Here, Commerce's interpretation of "door thresholds" as encompassing all door thresholds containing aluminum extrusions, whether assembled or not, was undoubtedly reasonable.  As the cases above confirmed even before Commerce issued its Original Scope Ruling, "the general scope language unambiguously includes aluminum extrusions that are part of an assembly."  *Whirlpool Corp.*, 890 F.3d at 1309.  Moreover, where a scope explicitly identifies a product by name, Commerce reasonably and correctly determines that product is in-scope.  *See Appleton Papers Inc. v. United States*, 929 F. Supp. 2d 1329, 1335 (Ct. Int'l Trade 2013) ("{I}t is the explicit terms of an order that must control Commerce's subsequent decisions in scope rulings."); *accord Shenyang Yuanda*, 776 F.3d at 1357 ("Yuanda also disregards the Orders' explicit inclusion of parts for curtain walls."); *Medline Indus., Inc. v. United States*, 961 F. Supp. 2d 1287, 1291 (Ct. Int'l Trade 2014) ("Because the Order specifically identifies wooden headboards and

footboards as subject merchandise, Commerce's interpretation of the scope language {as applying to wooden headboards and footboards} was reasonable.").

By disregarding Commerce's reasonable interpretation of "door thresholds" as encompassing all door thresholds—together with this Court's decisions supporting that interpretation—Judge Stanceu again "gave insufficient deference to Commerce's interpretation of the scope," "impermissibly substituted {his} judgment for that of Commerce," and "improperly narrowed the scope of the antidumping duty order." *Meridian Prods.*, 890 F.3d at 1278, 1281.

## C.     Commerce Correctly Determined Appellees' Door Thresholds Are Subassemblies

Commerce also rightly determined that Appellees' door thresholds are subassemblies and thus ineligible for the scope's finished merchandise exclusion. *See* Appx1002; Appx1459; Appx2808. As explained above, two types of assemblies are contemplated by the scope: (1) subassemblies, which are in-scope, and (2) finished merchandise, which is out-of-scope. Appx1455; Appx2804. Commerce has explained that a subassembly is an "intermediate product or any other partially assembled product that is something less than the full, permanent, and completed final finished product that would satisfy the finished merchandise exclusion." Appx1453; Appx2802. Because a "subassembly . . . cannot be a finished product," *Shenyang Yuanda*, 776 F.3d at 1358, this Court has made clear that subassemblies

"cannot qualify for the finished merchandise exclusion," *China Custom Mfg.*, 61 F.4th at 961.

This Court has twice affirmed Commerce's subassembly framework and the principle that subassemblies cannot be finished merchandise for purposes of the Orders. In *Shenyang Yuanda*, in addition to finding that curtain wall units are expressly covered by the scope, the Court affirmed Commerce's determination that curtain wall units are also in-scope subassemblies. 776 F.3d at 1357–59. The Court observed that, whereas "finished merchandise is a complete product upon entry," curtain wall units "are designed to be attached to other units to eventually form a completed curtain wall." *Id.* at 1358. Thus, "an individual curtain wall unit has no consumptive or practical use because multiple units are required to form the wall of a building." *Id.* (noting "no one purchases for consumption a single curtain wall piece or unit"). Because a lone curtain wall unit must be combined with other units to serve its purpose, the Court agreed with Commerce that curtain wall units are subassemblies. *Id.* ("A single unit does not a curtain wall make, nor is it a finished product."). Notably, this was so <u>despite</u> the producer's contention that curtain wall units are "fully and permanently assembled and completed at the time of entry." *See id.* Assembled or not, an intermediate product is simply not a final product. Commerce thus correctly determined that curtain wall units were ineligible for the

finished merchandise exclusion because a "part or subassembly, here a curtain wall unit, <u>cannot</u> be finished merchandise." *Id.*

This year, the Court reaffirmed both principles. In *China Custom Manufacturing*, the Court considered a scope ruling related to solar panel mounts, a component of a solar panel mounting system. 61 F.4th at 960. Commerce determined the mounts are subassemblies because they (i) are assemblies containing both aluminum extrusions and other components, and (ii) are "designed to be part of a downstream final product, just as curtain wall units {in *Shenyang Yuanda*} were designed to be part of the final product, a curtain wall." *Id.* Accordingly, Commerce found the solar panel mounts ineligible for the finished merchandise exclusion. *Id.* On appeal to the CIT, Judge Vaden affirmed, finding that Commerce's scope ruling "correctly applied the litany of Federal Circuit precedents interpreting the Orders{.}" *Id.* at 961.

In its further appeal to this Court, the appellant producer asked the Court to adopt Judge Stanceu's reading of the finished merchandise exclusion. Specifically, the appellant argued that, regardless whether they are subassemblies, its solar panel mounts should qualify for the finished merchandise exclusion because they are "fully and permanently assembled and completed at the time of entry" and "ready for installation." *Id.*; *cf.* Appx37–38 (remanding determination that Worldwide's door thresholds are subassemblies because they are "fully assembled at the time of

entry" and ready for installation "without any further finishing or fabrication"); Appx120 (remanding determination that Columbia's door thresholds are subassemblies because the CIT was unaware of evidence that they "require cutting or machining prior to incorporation into a door frame or other structure"). But the Court rejected that reasoning as "the same argument that the plaintiffs made and that we rejected in *Shenyang {Yuanda}*." *China Custom Mfg.*, 61 F.4th at 962. "The Orders exclude finished merchandise <u>containing</u> aluminum extrusions as parts that are fully and permanently assembled, not the parts themselves." *Id.* (emphasis in original). Thus, as Commerce explained below, the fact that a product enters the country assembled and ready for use does not make that product "finished." Appx1454; Appx2803. Because Commerce correctly determined the at-issue solar panel mounts were subassemblies, the Court held that Commerce likewise correctly declined to apply the finished merchandise exclusion. *China Custom Mfg.*, 61 F.4th at 961–63; *see also id.* at 962 ("In *Shenyang {Yuanda}*, we held that subassemblies cannot qualify for the finished merchandise exclusion.").

This appeal is governed squarely by these precedents. Consistent with *Shenyang Yuanda*, Commerce determined that Appellees' door thresholds are subassemblies because they are just one component, later assembled with other components, to support a finished door. Appx1001–1002; *see also* Appx1459–1460; Appx2808–2809 (noting door thresholds "do not function on their own, but rather

are incorporated into a larger downstream product" and "door thresholds must work in tandem with other components to be functional"). Thus, consistent with both *Shenyang Yuanda* and now *China Custom Manufacturing*, Commerce determined that Appellees' door thresholds cannot be finished merchandise. Appx1461–1462; Appx2810–2811. Commerce's determinations were both lawful—in that they were consistent with and, indeed, compelled by this Court's precedents—and supported by substantial evidence.

As illustrated above, this Court has repeatedly sustained Commerce's interpretation of the scope as including intermediate products (*i.e.*, subassemblies) designed for incorporation into a downstream installation. *See Shenyang Yuanda*, 776 F.3d at 1358–59, and *China Custom Mfg.*, 61 F.4th at 961. Here, Commerce reasonably applied that framework in determining that Appellees' door thresholds are subassemblies and not final goods. Door thresholds are the bottom piece of an exterior door frame. They are a single component designed for integration with other components to support a door. Alone, as Commerce correctly determined, a door threshold is just a strip of materials with no consumptive purpose or ability to function. Appx1459–1460, Appx1472–1473; Appx2808–2809, Appx2829–2830; *cf. Shenyang Yuanda*, 776 F.3d at 1358.

Because Appellees' door thresholds fit squarely within Commerce's subassembly framework, as twice affirmed by this Court, and subassemblies

28

definitionally cannot be finished merchandise, the CIT's remand decisions imposing Judge Stanceu's competing framework over Commerce's should be reversed. *See Meridian Prods.*, 890 F.3d at 1281–82 (reversing CIT remand order finding product was finished merchandise, and reinstating original scope ruling finding product was a subassembly; "That the CIT arrived at conclusions different from Commerce's factual findings is immaterial to the extent that Commerce's original scope ruling is reasonable and supported by substantial evidence.").

## IX.   **CONCLUSION**

For the foregoing reasons, AEFTC respectfully requests that the Court reverse the CIT's remand orders and reinstate Commerce's original scope determination.

Respectfully submitted,

*/s/ Robert E. DeFrancesco, III*
Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Enbar Toledano, Esq.
Elizabeth S. Lee, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
202-719-7000

*Counsel to the Aluminum Extrusions Fair Trade Committee*

Dated: June 29, 2023

# ADDENDUM

Slip Op. No. 22-143

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **WORLDWIDE DOOR COMPONENTS, INC.,** | |
| Plaintiff, | |
| v. | |
| **UNITED STATES,** | **Before:  Timothy C. Stanceu, Judge** |
| Defendant, | **Court No. 19-00012** |
| and | |
| **ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE AND ENDURA PRODUCTS, INC.,** | |
| Defendant-Intervenors. | |

### OPINION

[Sustaining an agency decision submitted in response to court order.]

Dated: December 16, 2022

*John M. Foote*, Kelley Drye & Warren LLP, of Washington, DC, for plaintiff.

*Aimee Lee*, Assistant Director, Civil Division, U.S. Department of Justice, of New York, NY, for defendant.  With her on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Tara K. Hogan*, Assistant Director.  Of counsel on the brief was *Nikki Kalbing*, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

*Robert E. DeFrancesco, III*, Wiley Rein LLP, of Washington, DC, for defendant-intervenors.  With him on the brief were *Alan H. Price* and *Elizabeth S. Lee*.

Stanceu, Judge: Plaintiff Worldwide Door Components, Inc. ("Worldwide")

brought this action to contest a decision (the "Scope Ruling") by the International Trade

Administration, U.S. Department of Commerce ("Commerce" or the "Department") on

its imported "door thresholds," each of which is an assembly containing an aluminum

extrusion among various other components.  In this litigation, Commerce previously

took the position that an aluminum extrusion component within each door threshold is

within the scope of antidumping and countervailing duty orders on aluminum

extrusions from the People's Republic of China (the "Orders").

Before the court is the Department's most recent decision ("Third Remand

Redetermination"), which Commerce submitted in response to the court's opinion and

order in *Worldwide Door Components, Inc. v. United States*, 46 CIT __, 589 F. Supp. 3d 1185

(2022) ("*Worldwide III*").  Responding to the court's order, Commerce decided in the

Third Remand Redetermination, under protest, that the imported door thresholds, in

the entirety, are excluded from the scope of the Orders.

Plaintiff has commented in favor of the Third Remand Redetermination.

Defendant-intervenors, the Aluminum Extrusions Fair Trade Committee and Endura

Products, Inc., a U.S. producer of aluminum extrusions, have commented in opposition.

The court sustains the decision in the Third Remand Redetermination that the

door thresholds are excluded from the scope of the Orders.

## I. BACKGROUND

Background on this litigation is presented in the court's previous opinions and is summarized and supplemented herein. *Id.*, 46 CIT at __, 589 F. Supp. 3d at 1187–92; *Worldwide Door Components, Inc. v. United States*, 45 CIT __, __, 537 F. Supp. 3d 1403, 1405–11 (2021) ("*Worldwide II*"); *Worldwide Door Components, Inc. v. United States*, 44 CIT __, __, 466 F. Supp. 3d 1370, 1372–73 (2020) ("*Worldwide I*").

The decision plaintiff contests in this litigation is *Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the People's Republic of China: Final Scope Rulings on Worldwide Door Components Inc., MJB Wood Group Inc., and Columbia Aluminum Products Door Thresholds*, P.R. Doc. 36 (Int'l Trade Admin. Dec. 19, 2018) ("*Scope Ruling*"). The Scope Ruling construed the scope of *Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650 (Int'l Trade Admin. May 26, 2011) ("*AD Order*"), and *Aluminum Extrusions From the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653 (Int'l Trade Admin. May 26, 2011) ("*CVD Order*").

The court remanded the Scope Ruling to Commerce in *Worldwide I*, ruling that Commerce had misinterpreted the scope language of the Orders in two respects. Commerce submitted a new determination in response (the "First Remand Redetermination"). *Final Results of Redetermination Pursuant to Ct. Remand* (Dec. 23,

2020), ECF No. 64-1 ("*First Remand Redetermination*").  In *Worldwide II*, the court again

issued a remand to the agency.  In response, Commerce filed another determination (the

"Second Remand Redetermination") with the court on December 13, 2021.  Final Results

of Redetermination Pursuant to Ct. Remand, ECF No. 85–1 ("*Second Remand*

*Redetermination*").  The court remanded the Second Remand Redetermination to

Commerce in *Worldwide III*.

Commerce filed the Third Remand Redetermination on September 9, 2022, in

response to the court's opinion and order in *Worldwide III*.  Final Results of

Redetermination Pursuant to Ct. Remand, ECF No. 101-1 ("*Third Remand*

*Redetermination*").  Plaintiff submitted comments in support on September 26, 2022.  Pl.'s

Comments in Supp. of Commerce's Third Remand Redetermination, ECF No. 103.  That

same day, defendant-intervenors filed their comments in opposition.  Def.-Intervenors'

Comments on Final Results of Third Remand Redetermination Pursuant to Ct. Remand,

ECF No. 104.  Defendant replied to the comments on October 6, 2022.  Def.'s Resp. to

Comments on Third Remand Redetermination, ECF No. 106.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

The court exercises subject matter jurisdiction under section 201 of the Customs

Courts Act of 1980, 28 U.S.C. § 1581(c), which grants jurisdiction over civil actions

brought under section 516A of the Tariff Act of 1930 ("Tariff Act"), 19 U.S.C. § 1516a.[1]

Among the decisions that may be contested according to section 516A is a

determination of "whether a particular type of merchandise is within the class or kind

of merchandise described in an . . . antidumping or countervailing duty order." *Id*.

§ 1516a(a)(2)(B)(vi).  In reviewing the Scope Ruling, the court must set aside any

determination, finding, or conclusion found "to be unsupported by substantial evidence

on the record, or otherwise not in accordance with law."  *Id*. § 1516a(b)(1)(B)(i).

### B. The Court's Decisions in *Worldwide I*, *Worldwide II*, and *Worldwide III*

The Orders apply generally to "aluminum extrusions," which are defined in the

Orders as "shapes and forms, produced by an extrusion process."  *AD Order*, 76 Fed.

Reg. at 30,650; *CVD Order*, 76 Fed. Reg. at 30,653.  As the court's previous decisions have

recognized, the door thresholds at issue in this litigation are not themselves aluminum

extrusions.  *Worldwide II*, 45 CIT at __, 537 F. Supp. 3d at 1411 ("Worldwide's door

thresholds are not 'aluminum extrusions' at the time of importation" (citing *Worldwide I*,

44 CIT at __, 466 F. Supp. 3d at 1357)).  Nevertheless, the Orders contain a provision (the

"subassemblies" provision) that enlarges the scope of the Orders to include aluminum

extrusion components present in certain imported "partially assembled merchandise."

---

[1] Citations to the United States Code and to the Code of Federal Regulations are to the 2018 editions.

*AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.  Another provision in the scope language of the Orders, the "finished merchandise exclusion," excludes from the scope of the Orders certain assembled and completed merchandise containing aluminum extrusions as parts.  *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.

At issue in this litigation are eighteen models of imported door thresholds, each of which is not itself an aluminum extrusion but is instead an assembly of various components, including polyvinyl chloride, other plastics, wood, or steel.  *Worldwide I*, 44 CIT at__, 466 F. Supp. 3d at 1373.  One of those components in each door threshold is fabricated from a single piece of extruded aluminum and, were it imported separately, would be described by the scope language of the Orders.  *Id.*

The court in *Worldwide I* held that the contested Scope Ruling, in determining that the aluminum extrusion component in each door threshold is subject to the Orders, misinterpreted the scope language of the Orders in three respects and discussed these errors in detail.  44 CIT at __, 466 F. Supp. 3d at 1373–79.  Among these errors was the Department's refusal to consider whether Worldwide's door thresholds were excluded from the scope of the Orders under the "finished merchandise exclusion."  *Id.*, 44 CIT at __, 466 F. Supp. 3d at 1376–78.  This express exclusion from the scope applies to "finished merchandise containing aluminum extrusions as parts that are fully and

permanently assembled and completed at the time of entry, such as finished windows

with glass, doors with glass or vinyl, picture frames with glass pane and backing

material, and solar panels." *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at

30,654.

      Commerce concluded in the Scope Ruling that "the express inclusion of 'door

thresholds' within the scope of the *Orders* (regardless of whether the door thresholds

are ready for use at the time of importation) renders the reliance of Worldwide . . . upon

the finished merchandise exclusion inapposite." *Scope Ruling* at 35–36; *see also*

*AD Order*, 76 Fed. Reg. at 30,651 & *CVD Order*, 76 Fed. Reg. at 30,654 ("Subject

extrusions may be identified with reference to their end use, such as fence posts,

electrical conduits, door thresholds, carpet trim, or heat sinks . . . ."). The court in

*Worldwide I* rejected the Department's reasoning because it misinterpreted the scope

language of the Orders. 44 CIT at __, 470 F. Supp. 3d at 1376 ("The scope language does

not expressly include all door thresholds in which there is an extruded aluminum

component. Instead, as the court has discussed, the inclusion of 'door thresholds' in the

scope language as an exemplar is confined to door thresholds that *are* aluminum

extrusions." (citing *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654)).

      *Worldwide I* concluded, further, that Commerce "erred in reasoning that 'finding

door thresholds excluded under the finished merchandise exclusion would render the

express inclusion of "door thresholds" meaningless.'"  44 CIT at __, 470 F. Supp. 3d at

1376 (quoting *Scope Ruling* at 36).  As the court stated, "[d]oor thresholds that are

fabricated from aluminum extrusions are 'extrusions' for purposes of the scope

language and are expressly included in the scope by operation of the reference to 'door

thresholds'; other door thresholds, which are not themselves 'extrusions' for purposes

of the Orders, are not."  *Id.*, 44 CIT at __, 466 F. Supp. 3d at 1376–77.  The court in

*Worldwide I* added that:

> Rather than rendering the express inclusion of door thresholds
> meaningless, excluding the assembled goods at issue from the Orders
> according to the finished merchandise exclusion would have no effect at
> all on the express inclusion of door thresholds, for a straightforward
> reason: a door threshold that is fabricated from an aluminum extrusion
> could never qualify under the finished merchandise exclusion in the first
> place because the finished merchandise exclusion applies only to
> assembled goods.

44 CIT at __, 466 F. Supp. 3d at 1377 (citing *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*,

76 Fed. Reg. at 30,654).

In light of the multiple errors the court identified, the court in *Worldwide I*

ordered Commerce to reconsider the Scope Ruling and to give "full and fair"

consideration to the issue of whether the finished merchandise exclusion applies to

Worldwide's door thresholds "upon making findings that are supported by substantial

record evidence."  44 CIT at __, 466 F. Supp. 3d at 1380.

In response to the court's opinion and order in *Worldwide I*, Commerce submitted the First Remand Redetermination on December 23, 2020. In it, Commerce disagreed with the court that the finished merchandise exclusion was relevant to the Department's analysis but addressed, under protest, the issue of whether this exclusion applied to Worldwide's door thresholds. Commerce concluded that it did not.

Based on its factual findings on the applications for which Worldwide's door thresholds are produced, Commerce reached two conclusions in the First Remand Redetermination. Commerce concluded, first, that these products do not qualify for the finished merchandise exclusion because they are "partially assembled merchandise" and "intermediate products" for purposes of the subassemblies provision in the Orders. *Worldwide II*, 45 CIT at __, 537 F. Supp. 3d at 1411 (citing *First Remand Redetermination* at 23).[2] Second, Commerce concluded that because they were described by the

_____

[2] The subassemblies provision states that "[t]he scope includes the aluminum extrusion components that are attached (*e.g.*, by welding or fasteners) to form subassemblies, *i.e.*, partially assembled merchandise unless imported as part of the finished goods 'kit' defined further below." *Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650, 30,651 (Int'l Trade Admin. May 26, 2011) ("*AD Order*"); *Aluminum Extrusions From the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653, 30,654 (Int'l Trade Admin. May 26, 2011) ("*CVD Order*"). The reference to the "kit" is a reference to the "finished goods kit" exclusion, under which the antidumping and countervailing duty orders exclude an imported good in unassembled form that includes all the parts required for assembly of a final finished good. *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654. Because the door thresholds at issue are imported in fully assembled, not disassembled, form, this exclusion does not apply.

subassemblies provision, Worldwide's door thresholds could not qualify for the

finished merchandise exclusion.  According to the First Remand Redetermination,

"[a] subassembly is merchandise which is designed for the sole purpose of becoming

part of a larger whole"; Commerce concluded that each of Worldwide's door

thresholds, which "must work in tandem with other components to be functional" and

is "a component of a larger downstream product," cannot, for those reasons, qualify for

the finished merchandise exclusion.  *First Remand Redetermination* at 24 (citation

omitted).

      The court in *Worldwide II* rejected certain of the reasoning by which Commerce

supported its ultimate conclusion in the First Remand Redetermination that the

aluminum extrusion components within the door thresholds were subject to the Orders.

"Under the Department's analysis, only goods that are not 'designed for the sole

purpose of becoming part of a larger whole'. . . can satisfy the finished merchandise

exclusion, but this rationale is contrary to the terms by which that exclusion is

expressed in the scope language."  *Worldwide II*, 45 CIT at __, 537 F. Supp. 3d at 1414

(quoting *First Remand Redetermination* at 24).  The court pointed to two of the exemplars

of products the scope language listed as qualifying for the finished merchandise

exclusion, finished windows with glass and doors with glass or vinyl, as products that

"*are* specifically designed for the sole purpose of becoming part of a larger whole."  *Id*.

The court stated that "[e]ven the products Commerce itself considered to satisfy the finished merchandise exclusion, i.e., a complete, assembled door unit, and a 'final finished door with glass,' . . . do not 'function on their own,' . . . and cannot function until incorporated into a wall or other part of a building." *Id*. The court concluded that "[t]he [First] Remand Redetermination does not offer a plausible explanation of why the articles mentioned in the 'door' and 'window' exemplars of the finished merchandise exclusion satisfy that exclusion but that Worldwide's door thresholds . . . do not." *Id*.

In the First Remand Redetermination, Commerce, relying solely on statements by defendant-intervenors that did not pertain specifically to Worldwide's door thresholds, and despite certain record evidence that *did* pertain to Worldwide's products, inferred from these statements, but did not expressly find, "that the particular door thresholds at issue in this litigation . . . are so designed and manufactured as to require cutting or machining prior to assembly of a door unit or other structure." *Worldwide II*, 45 CIT at __, 537 F. Supp. 3d at 1412. The court attached significance to whether Worldwide's imported door thresholds required cutting or machining prior to use because that issue "is directly relevant to the applicability of the finished merchandise exclusion, which pertains to 'finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled *and completed* at the time of entry.'" *Id*., 45 CIT at __, 537 F. Supp. 3d at 1413 (quoting *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed.

Reg. at 30,654). The court directed Commerce to reach "a finding from the record

evidence that the door thresholds at issue in this case either are, or are not, so designed

and produced as to require cutting or machining prior to use." *Id*., 45 CIT at __, 537 F.

Supp. 3d at 1414.

In response to the court's opinion and order in *Worldwide II*, Commerce issued

the Second Remand Redetermination. In the Second Remand Redetermination,

Commerce determined, under protest, that Worldwide's door thresholds were outside

the scope of the Orders. *Second Remand Redetermination* at 16.

The court in *Worldwide III* explained that the Second Remand Redetermination

was not a decision in a form the court could sustain because it "is not the actual scope

ruling or determination Commerce plans to issue," so "the Second Remand

Redetermination would not be self-effectuating should the court sustain it, and the

agency decision that would follow if it were sustained would escape direct judicial

review." 46 CIT at __, 589 F. Supp. 3d at 1192. Instead of providing the scope ruling

intended to be issued, Commerce in the Second Remand Redetermination stated that

"[s]hould the court sustain these Final Results of Redetermination, we will issue a

revised scope ruling accordingly." *Second Remand Redetermination* at 16. The court held

"the Department's proposed resolution of this litigation unsatisfactory" because "[n]ot

only would it deny the court the opportunity to review the agency's actual decision on

remand, it also would not allow the parties to comment on that decision before the

court reviews it." *Worldwide III*, 46 CIT at __, 589 F. Supp. 3d at 1192.  The court

directed "Commerce to issue a third remand redetermination that, like the agency

determination contested in this litigation, is a scope ruling or determination for the

court's review, and it must be in a form that would go into effect if sustained upon

judicial review." *Id.*, 46 CIT at __, 589 F. Supp. 3d at 1193.

The court in *Worldwide III* also took issue with the Second Remand

Redetermination "in presenting no reasoning for ruling that the door thresholds are

outside the scope of the Orders other than its incorrect conclusion that the court ordered

Commerce to do so." *Id.*  The court observed that "Commerce devoted most of the

substantive discussion in the Second Remand Redetermination to its disagreements

with certain of the issues the court decided previously" and explained how the

Department's interpretation of *Worldwide II* erred in three respects.  *Id.*, 46 CIT at __,

589 F. Supp. 3d at 1193–94.  The court ordered Commerce to submit a third

redetermination upon remand that complies with *Worldwide III*.  46 CIT at __, 589

F. Supp. 3d at 1195.

### C.  The Third Remand Redetermination

In the Third Remand Redetermination, Commerce decided once again, under

protest, that Worldwide's door thresholds, in the entirety, fall outside the scope of the

Orders. *Third Remand Redetermination* at 3. Commerce stated in the Third Remand

Redetermination that it "do[es] not intend to issue a scope ruling or other agency

determination subsequent to this Court's review of this remand redetermination" and

that "if the CIT [Court of International Trade] affirms this redetermination, a *Federal*

*Register* notice will be published stating that, consistent with the Court's holdings,

Worldwide's door thresholds are excluded from the scope of the *Orders*." *Id.* "Relevant

instructions to U.S. Customs and Border Protection (CPB) giving effect to that

determination, as appropriate, will also be issued at that time." *Id*.

　　As the court explained in *Worldwide III*, Commerce was required to make a

decision on whether the goods are within the scope of the Orders based on the record as

a whole. Commerce has now done so in the Third Remand Redetermination in a form

the court is able to sustain. The essential agency findings supporting the decision that

the door thresholds, in the entirety. are outside the scope of the Orders are supported

by substantial evidence on the record of this case. *See id*. at 8–16.

　　Defendant-intervenors' comments in opposition to the Third Remand

Redetermination are unconvincing and merely reiterate arguments the court has

rejected in its previous opinions and orders. Def.-Intervenors' Comments on Final

Results of Third Redetermination Pursuant to Ct. Remand 1–3 (Sept. 26, 2022), ECF

No. 104.

Defendant-intervenors argue, first, that the contested Scope Ruling correctly found Worldwide's door thresholds to be expressly included within the scope of the Orders. *Id*. at 1–2. They maintain that because of this express inclusion, "the agency's determination that the 'finished merchandise' exclusion is inapplicable to these products was correct." *Id*. As the court concluded in *Worldwide I*, and as the scope language of the Orders makes clear, the express reference in the scope language to "door thresholds" as an exemplar refers to door thresholds that are aluminum extrusions, not assemblies such as those at issue here. 44 CIT at __, 470 F. Supp. 3d at 1376.

They argue, next, that "Commerce's first redetermination, under respectful protest, that even considering the exclusion, door thresholds are 'subassemblies' within the meaning of the scope and not excludable as 'finished merchandise' was also supported by substantial evidence and in accordance with law." Def.-Intervenors' Comments 2. As discussed above, the Department's reasoning that "subassemblies" cannot qualify for the finished merchandise exclusion because they are goods "designed for the sole purpose of becoming part of a larger whole" was rejected by the court in *Worldwide II* as "contrary to the terms by which that exclusion is expressed in the scope language," which includes exemplars of products the scope language listed as qualifying for the finished merchandise exclusion even though they "*are* specifically

designed for the sole purpose of becoming part of a larger whole."  45 CIT at __, 537

F. Supp. 3d at 1414 (quoting *First Remand Redetermination* at 24).

Third, referring to Worldwide's door thresholds, defendant-intervenors argue

that "substantial record evidence also demonstrated that these products generally

require further finishing and fabrication after importation and prior to use, such that the

thresholds would also fail to meet the [finished merchandise] exclusion requirements in

this regard."  Def.-Intervenors' Comments 2–3.  This argument is also meritless.

Commerce permissibly concluded that the evidence upon which defendant-intervenors

rely for this argument did not pertain to the specific door thresholds at issue in this

proceeding.  Upon reassessing the record evidence, Commerce concluded in the Third

Remand Redetermination that "the record does not support the conclusion that

Worldwide's specific door thresholds require cutting or fabrication after importation

into the United States."  *Third Remand Redetermination* at 15.

**Court No. 19-00012**                                                      **Page 17**

### III.  CONCLUSION

For the reasons discussed in the foregoing, the court will enter judgment

sustaining the decision in the Third Remand Redetermination that Worldwide's door

thresholds are not within the scope of the Orders.

/s/ Timothy C. Stanceu
Timothy C. Stanceu, Judge

Dated: December 16, 2022
        New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>

WORLDWIDE DOOR COMPONENTS,
INC.,

         Plaintiff,

         v.

UNITED STATES,

         Defendant,

       and

ALUMINUM EXTRUSIONS FAIR
TRADE COMMITTEE AND ENDURA
PRODUCTS, INC.,

         Defendant-Intervenors.

</td><td>

Before:  Timothy C. Stanceu, Judge

Court No. 19-00012

</td></tr>
</table>

## JUDGMENT

Upon consideration of the "Third Remand Redetermination" submitted to the court by the International Trade Administration, U.S. Department of Commerce ("Commerce"), Final Results of Redetermination Pursuant to Court Remand (Sept. 9, 2022), ECF No. 101-1 ("*Third Remand Redetermination*"), and all filings and proceedings had herein, in conformance with the Opinion issued this day, and upon due deliberation, it is hereby

**ORDERED** that the decision in the Third Remand Redetermination that the imported door thresholds are excluded from the scope of *Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650 (Int'l Trade Admin. May 26, 2011), and *Aluminum Extrusions From the People's Republic of China:*

*Countervailing Duty Order*, 76 Fed. Reg. 30,653 (Int'l Trade Admin. May 26, 2011), (collectively, "the Orders") be, and hereby is, sustained; it is further

     **ORDERED** that, the decision in the Third Remand Redetermination having been sustained by this Court, and as Commerce expressly has provided in the Third Remand Redetermination, Commerce shall publish a *Federal Register* notice "stating that, consistent with the Court's holdings," the door thresholds at issue in this action are excluded from the scope of the Orders, *Third Remand Redetermination* at 3; it is further

     **ORDERED** that, as Commerce expressly has provided in the Third Remand Redetermination, Commerce shall issue, at the time of the publication of the *Federal Register* notice described above, "[r]elevant instructions to U.S. Customs and Border Protection (CBP) giving effect to that determination," *Third Remand Redetermination* at 3; it is further

     **ORDERED** that the instructions to U.S. Customs and Border Protection described above shall provide for liquidation of the entries of merchandise affected by this litigation in accordance with the Third Remand Redetermination and the aforementioned *Federal Register* notice; and it is further

     **ORDERED** that should any entries affected by this litigation be liquidated contrary to the Third Remand Redetermination and the aforementioned *Federal Register* notice, such liquidations shall be null and void and the affected entries shall be liquidated in accordance with this Judgment.

                              /s/ Timothy C. Stanceu
                              Timothy C. Stanceu, Judge

Dated: December 16, 2022
     New York, New York

Slip Op. 22-144

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| COLUMBIA ALUMINUM PRODUCTS, LLC, | |
| Plaintiff, | |
| v. | |
| UNITED STATES, | **Before:  Timothy C. Stanceu, Judge** |
| Defendant, | **Court No. 19-00013** |
| and | |
| ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE AND ENDURA PRODUCTS, INC., | |
| Defendant-Intervenors. | |

### OPINION

[Sustaining an agency decision submitted in response to court order.]

Dated: December 16, 2022

*Jeremy W. Dutra* and *Peter Koenig*, Squire Patton Boggs (US), LLP, of Washington, D.C., for plaintiff.

*Aimee Lee*, Assistant Director, Civil Division, U.S. Department of Justice, of New York, New York, for defendant.  With her on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Tara K. Hogan*, Assistant Director.  Of counsel on the brief was *Nikki Kalbing*, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

    *Robert E. DeFrancesco, III*, *Alan H. Price* and *Elizabeth S. Lee*, Wiley Rein, LLP, of Washington, D.C., for defendant-intervenors.

    Stanceu, Judge: Plaintiff Columbia Aluminum Products, LLC ("Columbia") brought this action to contest a determination (the "Scope Ruling") issued by the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") on its imported "door thresholds," each of which is an assembly containing an aluminum extrusion among various other components. In this litigation, Commerce previously took the position that an aluminum extrusion component within each door threshold is within the scope of antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China (the "Orders").

    Before the court is the Department's most recent decision ("Third Remand Redetermination"), which Commerce submitted in response to the court's opinion and order in *Columbia Aluminum Products, LLC. v. United States*, 46 CIT __, 587 F. Supp. 3d 1375 (2022) ("*Columbia III*"). Responding to the court's order, Commerce decided in the Third Remand Redetermination, under protest, that the imported door thresholds, in the entirety, are excluded from the scope of the Orders.

    Plaintiff has commented in favor of the Third Remand Redetermination. Defendant-intervenors, the Aluminum Extrusions Fair Trade Committee and Endura Products, Inc. ("Endura"), a U.S. producer of aluminum extrusions, have commented in opposition.

The court sustains the decision in the Third Remand Redetermination that the

door thresholds are excluded from the scope of the Orders.

## I. BACKGROUND

Background on this case is presented in the court's prior opinions and is briefly

summarized and supplemented herein.  *Id.*, 46 CIT at __, 587 F. Supp. 3d at 1377–82;

*Columbia Aluminum Products, LLC. v. United States*, 45 CIT __, __, 536 F. Supp. 3d 1346,

1348–52 (2021) ("*Columbia II*"); *Columbia Aluminum Products, LLC v. United States*, 44 CIT

__, __, 470 F. Supp. 3d 1353, 1354–56 (2020) ("*Columbia I*").

Columbia brought this action to contest the Scope Ruling, which Commerce

issued as *Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the

People's Republic of China: Final Scope Rulings on Worldwide Door Components, Inc., MJB

Wood Group, Inc., and Columbia Aluminum Products Door Thresholds*, P.R. Doc. 39 (Int'l

Trade Admin. Dec. 19, 2018) ("*Scope Ruling*").  The court remanded the Scope Ruling to

Commerce in *Columbia I*, ruling that Commerce had misinterpreted the scope language

of the Orders in two respects and remanded it again in *Columbia II*, ruling that

Commerce had relied upon a finding or inference that was not supported by substantial

evidence on the record.  The court issued a remand to Commerce once more in

*Columbia III*.

Commerce filed the Third Remand Redetermination with the court on

September 9, 2022.  Final Results of Redetermination Pursuant to Ct. Remand, ECF

No. 85-1 ("*Third Remand Redetermination*").  Plaintiff submitted comments in support on

September 23, 2022.  Pl. Columbia Aluminum Products, LLC's Comments on

Commerce's Final Remand Determination, ECF No. 87.  Defendant-intervenors filed

their comments in opposition on September 26, 2022.  Def.-Intervenors' Comments on

Final Results of Third Redetermination Pursuant to Ct. Remand, ECF No. 88.

Defendant replied to the comments on October 6, 2022.  Def.'s Resp. to Comments on

Third Remand Redetermination, ECF No. 90.

## II. DISCUSSION

### A.  Jurisdiction and Standard of Review

The court exercises subject matter jurisdiction under section 201 of the Customs

Courts Act of 1980, 28 U.S.C. § 1581(c), which grants jurisdiction over civil actions

brought under section 516A of the Tariff Act of 1930 ("Tariff Act"), 19 U.S.C. § 1516a.[1]

Among the decisions that may be contested according to Section 516A is a

determination of "whether a particular type of merchandise is within the class or kind

of merchandise described in an . . . antidumping or countervailing duty order."  *Id.*

---

[1] Citations to the United States Code and to the Code of Federal Regulations are
to the 2018 editions.

§ 1516a(a)(2)(B)(vi).  In reviewing an agency determination, including one issued in

response to court remand, the court must set aside any determination, finding, or

conclusion found "to be unsupported by substantial evidence on the record, or

otherwise not in accordance with law."  *Id*. § 1516a(b)(1)(B)(i).

## B. The Court's Decisions in *Columbia I*, *Columbia II*, and *Columbia III*

The Orders apply generally to "aluminum extrusions," which are defined in the

Orders as "shapes and forms, produced by an extrusion process."  *Aluminum Extrusions*

*from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650, 30,653

(Int'l Trade Admin. May 26, 2011) ("*AD Order*"); *Aluminum Extrusions From the People's*

*Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653, 30,653 (Int'l Trade

Admin. May 26, 2011) ("*CVD Order*").  As the court's previous decisions have

recognized, the door thresholds at issue in this litigation are not themselves aluminum

extrusions.  Nevertheless, the Orders contain a provision (the "subassemblies"

provision) that enlarges the scope of the Orders to include certain "partially assembled"

products that do not fall within the scope of the term "aluminum extrusions" but

contain an aluminum extrusion as a component.  Another provision in the scope

language of the Orders, the "finished merchandise exclusion," excludes from the scope

of the Orders certain assembled and completed merchandise containing aluminum

extrusions as parts.  *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.

At issue in this litigation are ten models of imported door thresholds, each of which is not itself an aluminum extrusion but is instead an assembly of various components. One of those components in each door threshold is fabricated from a single piece of extruded aluminum. Were that component imported separately, it would fall within the scope language of the Orders. Each of the ten models of door thresholds contains, in addition to the aluminum extrusion component, various other, non-aluminum components (made of various materials such as plastic or wood).

In *Columbia I*, the court held that the contested Scope Ruling, in determining that the aluminum extrusion component in each door threshold is subject to the Orders, misinterpreted the scope language of the Orders in three respects and discussed these errors in detail. 44 CIT at __, 470 F. Supp. 3d at 1356–62. Among these errors was the Department's refusal to consider whether Columbia's door thresholds were excluded from the scope of the Orders under the "finished merchandise exclusion." *Id.*, 44 CIT at __, 470 F. Supp. 3d at 1358–60. This express exclusion from the scope applies to "finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels." *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.

Commerce concluded in the Scope Ruling that "the express inclusion of 'door thresholds' within the scope of the *Orders* (regardless of whether the door thresholds are ready for use at the time of importation) renders the reliance of . . . Columbia upon the finished merchandise exclusion inapposite." *Scope Ruling* at 35–36; *see also AD Order*, 76 Fed. Reg. at 30,651 & *CVD Order*, 76 Fed. Reg. at 30,654 ("Subject extrusions may be identified with reference to their end use, such as fence posts, electrical conduits, door thresholds, carpet trim, or heat sinks . . . ."). The court in *Columbia I* rejected the Department's reasoning because it misinterpreted the "door thresholds" exemplar in the scope language of the Orders. 44 CIT at __, 470 F. Supp. 3d at 1359 ("The scope language does not expressly include all door thresholds in which there is an extruded aluminum component. Instead, as the court has discussed, the inclusion of 'door thresholds' in the scope language as an exemplar is confined to door thresholds that *are* aluminum extrusions." (citing *AD Order,* 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654)).

The court in *Columbia I* concluded, further, that "Commerce also erred in reasoning that 'finding door thresholds excluded under the finished merchandise exclusion would render the express inclusion of "door thresholds" meaningless.'" 44 CIT at __, 470 F. Supp. 3d at 1359 (quoting *Scope Ruling* at 36). As the court recognized, "[d]oor thresholds that are fabricated from aluminum extrusions are

'extrusions' for purposes of the scope language and are expressly included in the scope language by operation of the reference to 'door thresholds'; other door thresholds, which are not themselves 'extrusions' for purposes of the Orders, are not." *Id.*

*Columbia I* added that:

> Rather than rendering the express inclusion of door thresholds meaningless, excluding the assembled goods at issue from the Orders according to the finished merchandise exclusion would have no effect at all on the express inclusion of door thresholds, for a straightforward reason: a door threshold that is fabricated from an aluminum extrusion could never qualify under the finished merchandise exclusion in the first place because the finished merchandise exclusion applies only to assembled goods.

*Id.* (citing *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654).

In light of the errors the court identified, the court in *Columbia I* ordered Commerce to reconsider the Scope Ruling and to give "full and fair" consideration to the issue of whether the finished merchandise exclusion applies to Columbia's door thresholds, "upon making findings that are supported by substantial record evidence." *Id.*, 44 CIT at __, 470 F. Supp. 3d. at 1362.

In response to the court's opinion and order in *Columbia I*, Commerce filed a new decision (the "First Remand Redetermination") on December 23, 2020, Final Results of Redetermination Pursuant to Ct. Remand, ECF No. 48-1 ("*First Remand Redetermination*"), which was reviewed by the court in *Columbia II*. In the First Remand Redetermination, Commerce, relying solely on statements by defendant-intervenors

that did not pertain specifically to Columbia's door thresholds, and despite certain

record evidence that *did* pertain to Columbia's products, implied, but did not expressly

find, "that the specific door thresholds at issue in this proceeding are so designed and

manufactured as to require cutting or machining prior to incorporation into a door

frame or other structure." *Columbia II*, 45 CIT at __, 536 F. Supp. 3d at 1353; *see also First*

*Remand Redetermination* at 44–45. The court attached significance to whether Columbia's

imported door thresholds required cutting or machining prior to use because that issue

"bears on the language in the finished merchandise exclusion referring to 'finished

merchandise containing aluminum extrusions as parts that are fully and permanently

assembled *and completed* at the time of entry.'" *Id.*, 45 CIT at __, 536 F. Supp. 3d at 1354

(quoting *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654).

Recognizing the importance of this factual question, the court ordered Commerce in

*Columbia II* to "make a factual determination to resolve this issue based on a

consideration of the record evidence, viewed in the entirety." *Id.*

     The court in *Columbia II* also found fault with certain reasoning in the First

Remand Redetermination pertaining to the scope of the finished merchandise exclusion.

Commerce determined that Columbia's door thresholds were described by the

"subassemblies" provision in the scope language, *First Remand Redetermination* at 2,

under which "[t]he scope includes the aluminum extrusion components that are

attached (*e.g.*, by welding or fasteners) to form subassemblies, *i.e.*, partially assembled

merchandise unless imported as part of the finished goods 'kit' defined further below,"[2]

*AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.  According to the

First Remand Redetermination, "a subassembly is merchandise which is designed for

the sole purpose of becoming part of a larger whole"; Commerce concluded that each of

Columbia's door thresholds, which "must work in tandem with other components to be

functional" and is "a component of a larger downstream product," cannot, for those

reasons, qualify for the finished merchandise exclusion.  *First Remand Redetermination* at

23–24 (citation omitted).

      The court noted that Commerce, in the First Remand Redetermination,

"reasoned that goods falling within the subassemblies provision of the Orders cannot

also be considered goods qualifying for the finished merchandise exclusion, i.e.,

Commerce considers these two categories to be mutually exclusive."  *Columbia II*, 45 CIT

at __, 536 F. Supp. 3d at 1352 (citing *First Remand Redetermination* at 17–22).  "Thus,

---

[2] The reference to the "kit" is a reference to the "finished goods kit" exclusion, under which the antidumping and countervailing duty orders exclude an unassembled package of all the necessary parts to assemble a final finished good.  *Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650, 30,651 (Int'l Trade Admin. May 26, 2011) ("*AD Order*"); *Aluminum Extrusions From the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653, 30,654 (Int'l Trade Admin. May 26, 2011) ("*CVD Order*").  Because the door thresholds at issue are imported in fully assembled, not disassembled form, this exclusion does not apply.

Commerce employed an analysis under which any goods it deems to be described by

the subassemblies provision are, *per se*, ineligible for the finished merchandise

exclusion." *Id*. The court did not sustain this reasoning, nor did the court reject it.

Instead, the court stated that "[t]he court need not decide whether this analysis is a

correct interpretation of the scope language, for even if it is, the Department's decision

still must be remanded to Commerce because it relies upon an impermissible finding or

inference." *Id*. Thus, the court in *Columbia II* did not decide the question of whether or

not Columbia's imported door thresholds were described by the subassemblies

provision in the scope of the Orders.

 The court proceeded in *Columbia II* to discuss the reasons why Commerce must

decide the issue of whether Columbia's door thresholds "are so designed and

manufactured as to require cutting and machining prior to incorporation into a door

frame or other structure," 45 CIT at __, 536 F. Supp. 3d at 1353, and then decide whether

or not the finished merchandise exclusion applied to Columbia's imported door

thresholds.

 With regard to the finished merchandise exclusion, Commerce reasoned in the

First Remand Redetermination that the exemplars mentioned in the scope language on

the finished merchandise exclusion are defined by the scope language as finished

merchandise and therefore, unlike Columbia's door thresholds, are not "intermediate

products" described by the subassemblies provision. *Columbia II*, 45 CIT at __,

536 F. Supp. 3d at 1355–56 (quoting *First Remand Redetermination* at 46). The court

identified flaws in the Department's reasoning, which failed to recognize that two

exemplars of products the scope language described as satisfying the finished

merchandise exclusion, finished windows with glass and doors with glass or vinyl, also

describe products designed to become part of a larger whole. *Id*., 45 CIT at __, 536

F. Supp. 3d at 1355. The court noted, for example, that an assembled door is designed

to become part of a larger structure, such as a door frame assembly, and a finished

window part of a dormer or wall, with both ultimately destined to become part of a

building. *Id*. Commerce nevertheless insisted in the First Remand Redetermination

that because of the specific mention of the assembled door and the assembled window

in the language of the finished merchandise exclusion, "[t]here is no need to further

analyze whether the enumerated products in the finished merchandise exclusion work

in conjunction with other products, and no requirement that, for example, a window

with glass or a door with glass or vinyl be assembled into a house to satisfy the finished

merchandise exclusion." *Id*., 45 CIT at __, 536 F. Supp. 3d at 1356 (quoting *First Remand

Redetermination* at 46). The court opined in *Columbia II* that "[t]his reasoning is based on

a serious misinterpretation of the scope language setting forth the finished merchandise

exclusion." *Id*. "Contrary to the express terms of that exclusion, Commerce interprets

the exemplars therein as separate, individual exclusions rather than as what they

plainly are.  They are exemplars, as shown by the use of the words 'such as.'"  *Id*.

(quoting *AD Order,* 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654).

At its conclusion, *Columbia II* directed Commerce to "reconsider in the entirety

the decision reached in the [First] Remand Redetermination as to the finished

merchandise exclusion and reach a new determination that complies with the

instructions in this Opinion and Order."  45 CIT at __, 536 F. Supp. 3d at 1357.

In response to the court's opinion and order in *Columbia II*, Commerce issued the

Second Remand Redetermination.  Final Results of Redetermination Pursuant to Ct.

Remand (Dec. 13, 2021), ECF No. 67-1 (*"Second Remand Redetermination"*).  In the Second

Remand Redetermination, Commerce determined, under protest, that the door

thresholds were outside the scope of the Orders.  *Id*. at 17.

The court in *Columbia III* explained that the Second Remand Redetermination

was not a decision in a form the court could sustain because it "is not the actual scope

ruling or determination Commerce plans to issue," so "it would not be self-effectuating

should the court sustain it, and the agency decision that would follow if it were

sustained would escape direct judicial review."  46 CIT at __, 587 F. Supp. 3d at 1382.

Instead of providing the scope ruling intended to be issued, Commerce in the Second

Remand Redetermination stated that "[s]hould the court sustain these Final Results of

Redetermination, we will issue a revised scope ruling accordingly." *Second Remand*

*Redetermination* at 17.  The court held "the Department's proposed resolution of this

litigation unsatisfactory" because "[n]ot only would it deny the court the opportunity to

review the agency's actual decision on remand, it also would not allow the parties to

comment on that decision before the court reviews it." *Columbia III*, 46 CIT at __, 587 F.

Supp. 3d at 1382.  The court directed "Commerce to issue a third remand

redetermination that, like the agency determination contested in this litigation, is a

scope ruling or determination for the court's review, and it must be in a form that

would go into effect if sustained upon judicial review." *Id.*, 46 CIT at __, 587 F. Supp. 3d

at 1383.

    The court in *Columbia III* also took issue with the Second Remand

Redetermination "in presenting no reasoning for ruling that the door thresholds are

outside the scope of the Orders other than its incorrect conclusion that the court ordered

Commerce to do so." *Id.*  The court observed that "Commerce devoted most of the

substantive discussion in the Second Remand Redetermination to its disagreements

with certain of the issues the court decided previously" and explained how the

Department's interpretation of *Columbia II* erred in three respects.  *Id.*, 46 CIT at __,

587 F. Supp. 3d at 1383–84.  The court ordered Commerce to submit a third

redetermination upon remand that complies with *Columbia III*.  *Id.*, 46 CIT at __, 587

F. Supp. 3d at 1385.

### C.  The Third Remand Redetermination

In the Third Remand Redetermination, Commerce decided once again, and again

under protest, that Columbia's door thresholds, in the entirety, fall outside the scope of

the Orders.  *Third Remand Redetermination* at 3.  Commerce stated in the Third Remand

Redetermination that it "do[es] not intend to issue a scope ruling or other agency

determination subsequent to this Court's review of this remand redetermination" and

that "if the CIT [Court of International Trade] affirms this redetermination, a *Federal*

*Register* notice will be published stating that, consistent with the Court's holdings,

Columbia's door thresholds are excluded from the scope of the *Orders*."  *Id.*  "Relevant

instructions to U.S. Customs and Border Protection (CPB) giving effect to that

determination, as appropriate, will also be issued at that time."  *Id*.

As the court explained in *Columbia III*, Commerce was required to make a

decision on whether the goods are within the scope of the Orders based on the record as

a whole.  Commerce has now done so in its decision in the Third Remand

Redetermination in a form the court is able to sustain.  The essential agency findings

supporting the decision that the door thresholds, in the entirety, are outside the scope of

the Orders are supported by substantial evidence on the record of this case. *See id.* at 8–

16.

Defendant-intervenors' comments in opposition to the Third Remand

Redetermination are unconvincing and merely reiterate arguments the court has

rejected in its previous opinions and orders. Def.-Intervenors' Comments on Final

Results of Third Redetermination Pursuant to Court Ct. Remand 1–3 (Sept. 26, 2022),

ECF No. 88.

Defendant-intervenors argue, first, that the contested Scope Ruling was correct in

"finding Columbia's door thresholds to be expressly included within the scope of these

orders" and in ruling that the finished merchandise exclusion is "inapplicable." *Id.* at 1.

As the court concluded in *Columbia I*, and as the scope language of the Orders makes

clear, the express reference in the scope language to "door thresholds" as an exemplar

refers to door thresholds that are aluminum extrusions, not assemblies such as those at

issue here. *Columbia I*, 44 CIT at __, 470 F. Supp. 3d at 1359.

They argue, next, that "Commerce's first redetermination, under respectful

protest, that even considering the exclusion, door thresholds are 'subassemblies' within

the meaning of the scope and not excludable 'finished merchandise' was also supported

by substantial evidence and in accordance with law." Def.-Intervenors' Comments 2.

As discussed above, the Department's reasoning that "subassemblies" cannot qualify

for the finished merchandise exclusion because they are goods "designed for the sole

purpose of becoming part of a larger whole," *Columbia II*, 45 CIT at __, 536 F. Supp. 3d

at 1355 (quoting *First Remand Redetermination* at 24), was rejected by the court in

*Columbia II* as "contrary to the express terms of [the finished merchandise] exclusion,"

which includes "exemplars of products" even though they "are designed for the sole

purpose of becoming part of a larger whole,"  45 CIT at __, 536 F. Supp. 3d at 1356.

      Third, referring to Columbia's door thresholds, defendant-intervenors argue that

"substantial record evidence also demonstrated that these products generally require

further finishing and fabrication after importation and prior to use, such that the

thresholds would also fail to meet the [finished merchandise] exclusion requirements in

this regard."  Def.-Intervenors' Comments 2.  This argument is also meritless.

Commerce permissibly concluded that the evidence upon which defendant-intervenors

rely for this argument did not pertain to the specific door thresholds at issue in this

proceeding.  Upon reassessing the record evidence, Commerce concluded in the Third

Remand Redetermination that "the record does not support the conclusion that

Columbia's specific door thresholds require cutting or fabrication after importation into

the United States." *Third Remand Redetermination* at 18.

### III.  CONCLUSION

For the reasons discussed in the foregoing, the court will enter judgment

sustaining the decision in the Third Remand Redetermination that Columbia's door

thresholds are not within the scope of the Orders.

/s/ Timothy C. Stanceu

Timothy C. Stanceu, Judge

Dated: December 16, 2022
     New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| COLUMBIA ALUMINUM PRODUCTS, LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>UNITED STATES,<br><br>                    Defendant,<br><br>          and<br><br>ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE AND ENDURA PRODUCTS, INC.,<br><br>                    Defendant-Intervenors. | **Before:  Timothy C. Stanceu, Judge**<br><br>**Court No. 19-00013** |

**JUDGMENT**

Upon consideration of the "Third Remand Redetermination" submitted to the court by the International Trade Administration, U.S. Department of Commerce ("Commerce"), Final Results of Redetermination Pursuant to Court Remand (Sept. 9, 2022), ECF No. 85-1 ("*Third Remand Redetermination*"), and all filings and proceedings had herein, in conformance with the Opinion issued this day, and upon due deliberation, it is hereby

**ORDERED** that the decision in the Third Remand Redetermination that the imported door thresholds are excluded from the scope of *Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650 (Int'l Trade Admin. May 26, 2011), and *Aluminum Extrusions From the People's Republic of China:*

*Countervailing Duty Order*, 76 Fed. Reg. 30,653 (Int'l Trade Admin. May 26, 2011), (collectively, "the Orders") be, and hereby is, sustained; it is further

**ORDERED** that, the decision in the Third Remand Redetermination having been sustained by this Court, and as Commerce expressly has provided in the Third Remand Redetermination, Commerce shall publish a *Federal Register* notice "stating that, consistent with the Court's holdings," the door thresholds at issue in this action are excluded from the scope of the Orders, *Third Remand Redetermination* at 3; it is further

**ORDERED** that, as Commerce expressly has provided in the Third Remand Redetermination, Commerce shall issue, at the time of the publication of the *Federal Register* notice described above, "[r]elevant instructions to U.S. Customs and Border Protection (CBP) giving effect to that determination," *Third Remand Redetermination* at 3; it is further

**ORDERED** that the instructions to U.S. Customs and Border Protection described above shall provide for liquidation of the entries of merchandise affected by this litigation in accordance with the Third Remand Redetermination and the aforementioned *Federal Register* notice; and it is further

**ORDERED** that should any entries affected by this litigation be liquidated contrary to the Third Remand Redetermination and the aforementioned *Federal Register* notice, such liquidations shall be null and void and the affected entries shall be liquidated in accordance with this Judgment.

/s/ Timothy C. Stanceu
Timothy C. Stanceu, Judge

Dated: December 16, 2022
        New York, New York

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:**  22-1532, 22-1534

**Short Case Caption:**  Aluminum Extrusions Fair Trade Committee v. United States

---

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

---

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑  the filing has been prepared using a proportionally-spaced typeface and includes ___6,347___ words.

☐  the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐  the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: ___06/29/2023___     Signature:  /s/ Robert E. DeFrancesco, III

Name:  Robert E. DeFrancesco, III