# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

**WORLDWIDE DOOR COMPONENTS, INC.,**
*Plaintiff-Appellee*

v.

**UNITED STATES, ENDURA PRODUCTS, INC.,**
*Defendants*

**ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,**
*Defendant-Appellant*

_____

## 2023-1532

_____

Appeal from the United States Court of International Trade
in No. 1:19:cv-00012-TCS, Senior Judge Timothy C. Stanceu.

_____

**COLUMBIA ALUMINUM PRODUCTS, LLC,**
*Plaintiff-Appellee*

v.

**UNITED STATES, ENDURA PRODUCTS, INC.,**
*Defendants*

**ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,**
*Defendant-Appellant*

_____

## 2023-1534

_____

Appeal from the United States Court of International Trade
in No. 1:19:cv-00013-TCS, Senior Judge Timothy C. Stanceu.

_____

## RESPONSE BRIEF OF PLAINTIFFS-APPELLEES

**JOHN M. FOOTE**
**MELISSA M. BREWER**

**KELLEY DRYE & WARREN LLP**
**3050 K Street, N.W., Suite 400**
**Washington, DC  20007**
**(202) 342-8400**

**Counsel for Plaintiff-Appellee,**
**Worldwide Door Components, Inc.**

**JEREMY W. DUTRA**
**SQUIRE PATTON BOGGS (US) LLP**

**2550 M Street, NW**
**Washington, DC 20037**
**(202) 626-6237**
**Counsel to Plaintiff-Appellee,**
**Columbia Aluminum Products, LLC**

**Dated: August 8, 2023**

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---:|:---|
| **Case Number** | 2023-1532, 2023-1534 |
| **Short Case Caption** | Worldwide Door Components, Inc. v. United States |
| **Filing Party/Entity** | Plaintiff-Appellee Worldwide Door Components, Inc. |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/08/2023

Signature: /s/ John M. Foote

Name: John M. Foote

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Worldwide Door Components, Inc. | N/A | Worldwide Door Components, Inc. does not have any publicly-owned companies, is privately owned, and does not have any publicly-owned affiliates |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

☐     Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable          ☐ Additional pages attached

| John M. Foote, Melissa M. Brewer | Kelley Drye & Warren | 3050 K St. NW Washington, DC 20007 |
|---|---|---|
|  |  |  |
|  |  |  |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below)    ☐ No    ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable          ☐ Additional pages attached

| N/A |  |  |
|---|---|---|
|  |  |  |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2023-1532, 2023-1534 |
| **Short Case Caption** | Columbia Aluminum Products, LLC v. US |
| **Filing Party/Entity** | Columbia Aluminum Products, LLC |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/08/2023

Signature: /s/ Jeremy William Dutra

Name: Jeremy William Dutra

**FORM 9. Certificate of Interest**

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| Columbia Aluminum Products, LLC | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑   None/Not Applicable              ☐   Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑   Yes (file separate notice; see below)     ☐   No     ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable              ☐   Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

**PAGE**

STATEMENT OF RELATED CASES ....................................................1

STATEMENT OF THE CASE.............................................................2

SUMMARY OF THE ARGUMENT ....................................................18

ARGUMENT ..................................................................................20

I.    STANDARD OF REVIEW ..........................................................20

II.   COMMERCE'S FINDING THAT THRESHOLD ASSEMBLIES ARE EXCLUDED FROM THE SCOPE OF THE ORDERS IS LAWFUL AND SUPPORTED BY SUBSTANTIAL RECORD EVIDENCE.......................................21

    A.    Legal Framework for Scope Proceedings ...........................21

    B.    Commerce Must Read the Scope Language in Its Entirety ...............23

    C.    The Unambiguous Scope Language Demonstrates that the Finished Merchandise Exclusion Applies to the Threshold Assemblies.......................................27

    D.    Appellant Misreads and Misapplies Prior Court Decisions ..................................................30

III.  CONCLUSION...........................................................................37

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Allegheny Bradford Corp. v. United States,
  342 F. Supp. 2d 1172 (Ct. Int'l Trade 2004) .....................................23

Altx, Inc. v. United States,
  370 F.3d 1108 (Fed. Cir. 2004) .........................................................20

ArcelorMittal Stainless Belgium N.V. v. United States,
  694 F.3d 82 (Fed. Cir. 2012) .......................................................23, 26

China Custom Mfg. Inc. v. United States,
  61 F.4th 956 (Fed. Cir. 2023) ..................................................... 30-32

Columbia Aluminum Products, LLC v. United States,
  Slip Op. 22-144 (Ct. Int'l Trade Dec. 16, 2022) ("Columbia IV")
  (Appx151-68)..................................................................................*passim*

Duferco Steel, Inc. v. United States,
  296 F.3d 1087 (Fed. Cir. 2002) ...........................................22, 24, 27

Fedmet Res. Corp. v. United States,
  755 F.3d 912 (Fed. Cir. 2014) ...........................................................34

King Supply Co. v. United States,
  674 F.3d 1343 (Fed. Cir. 2012) .........................................................24

Legacy Classic Furniture, Inc. v. United States,
  867 F. Supp. 2d 1321 (Ct. Int'l Trade 2012) ............................. 24-25

Meridian Products, LLC v. United States,
  851 F.3d 1375 (Fed. Cir. 2017) ....................................................23, 26

Meridian Products, LLC v. United States,
  890 F.3d 1272 (Fed. Cir. 2018) ............................................. 24, 32-34

Mid Continent Nail Corp. v. United States,
  725 F.3d 1295 (Fed. Cir. 2013) ....................................................23, 26

Ningbo Dafa Chem. Fiber Co. v. United States,
  580 F.3d 1247 (Fed. Cir. 2009) ............................................................20

NMB Singapore Ltd. v. United States,
  557 F.3d 1316 (Fed. Cir. 2009) ............................................................20

Novosteel SA v. United States,
  284 F.3d 1261 (Fed. Cir. 2002) ............................................................23

Perfectus Aluminum, Inc. v. United States,
  836 Fed. Appx. 883 (Fed. Cir. 2020)............................................34, 35

Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States,
  776 F.3d 1351 (Fed. Cir. 2015) ................................................. 21, 30-32

Tak Fat Trade Co. v. United States,
  396 F.3d 1378 (Fed. Cir. 2005) ................................................... 21-22

Wheatland Tube Co. v. United States,
  161 F.3d 1365 (Fed. Cir. 1998) ................................................... 24-25

Whirlpool Corp. v. United States,
  890 F.3d 1302 (Fed. Cir. 2018) ............................................32, 33, 34

Worldwide Door Components, Inc. v. United States,
  Slip Op. 22-143 (Ct. Int'l Trade Dec. 16, 2022) ("Worldwide IV")
  (Appx68-84)...................................................................................passim

## Statutes and Regulations

19 U.S.C. § 1516a(a)(2)(B)(vi)...................................................................21

19 U.S.C. § 1516a(b)(1)(B)(i).....................................................................20

19 C.F.R. § 351.225(k) ........................................................................21, 22

19 C.F.R. § 351.225(k)(1)...................................................................passim

19 C.F.R. § 351.225(k)(1) (2018 version) ...................................... 25-26

19 C.F.R. § 351.225(k)(2)...................................................................passim

# Administrative Determinations

Aluminum Extrusions from the People's Republic of China,
76 Fed. Reg. 30,650 (Dep't Commerce May 26, 2011)
("AD Order") ...............................................................................*passim*

Aluminum Extrusions from the People's Republic of China,
76 Fed. Reg. 30,653 (Dep't Commerce May 26, 2011)
("CVD Order")..............................................................................*passim*

Antidumping and Countervailing Duty Orders on Aluminum
Extrusions from the People's Republic of China:
Final Scope Rulings on Worldwide Door Components Inc.,
MJB Wood Group Inc., and Columbia Aluminum Products Door
Threshold (Dep't Commerce Dec. 19, 2018) (Appx969-1006)
("Final Scope Ruling") ...............................................................*passim*

Final Results of Redetermination Pursuant to Court Remand;
*Worldwide Door Components, Inc. v. United States,*
Ct. No. 19-00012 (Dep't Commerce Dec. 23, 2020)
(Appx1437-1474) ............................................................ 14-15, 19, 29

Final Results of Redetermination Pursuant to Court Remand;
*Columbia Aluminum Products, LLC v. United States,*
Ct. No. 19-00013 (Dep't Commerce Dec. 23, 2020)
(Appx2786-87)................................................................. 14-15, 19, 29

Final Results of Redetermination Pursuant to Court Remand;
*Worldwide Door Components, Inc. v. United States,*
Ct. No 19-00012 (Dep't Commerce Dec. 13, 2021)
(Appx1589-1604) .........................................................................16, 21

Final Results of Redetermination Pursuant to Court Remand;
*Columbia Aluminum Products, LLC v. United States,*
Ct. No. 19-00013 (Dep't Commerce Dec. 13, 2021)
(Appx2932-33)..............................................................................16, 21

Final Results of Redetermination Pursuant to Court Remand;
*Worldwide Door Components, Inc. v. United States,*
Ct. No. 19-00012 (Dep't Commerce Sept. 9, 2022)
(Appx1698-1717) .......................................................................*passim*

Final Results of Redetermination Pursuant to Court Remand;
   *Columbia Aluminum Products, LLC v. United States*,
   Ct. No. 19-00013 (Dep't Commerce Sept. 9, 2022)
   (Appx3020-38) .............................................................................................*passim*


**Miscellaneous**

Regulations To Improve Administration and Enforcement of
   Antidumping and Countervailing Duty Laws,
   86 Fed. Reg. 52,300 (Dep't Commerce Sept. 20, 2021) ........................ 21-22, 26

Plaintiffs-Appellees Worldwide Door Components, Inc. ("Worldwide") and Columbia Aluminum Products, LLC ("Columbia") (collectively "Plaintiffs-Appellees") submit this brief in response to the June 29, 2023 Brief filed on behalf of Defendant-Appellant The Aluminum Extrusions Fair Trade Committee ("AEFTC") (hereinafter "AEFTC Br.").

## STATEMENT OF RELATED CASES

In accordance with Rule 47.5 of the Rules of this Court, counsel for Plaintiffs-Appellees are unaware of any other appeal from the same civil actions that has previously been before this or any other appellate court. Counsel are unaware of any other case that would be affected by the Court's decision in this consolidated appeal.

## STATEMENT OF THE CASE

Plaintiffs-Appellees disagree with the statement of the case set forth by AEFTC and believe the following more accurately describes the case before the Court.

Defendant-Appellant AEFTC challenges the U.S. Department of Commerce's ("Commerce") Final Results of Redetermination Pursuant to Court Remand; *Worldwide Door Components, Inc. v. United States*, Ct. No. 19-00012 (Dep't Commerce Sept. 9, 2022) (Appx1698-1717); Final Results of Redetermination Pursuant to Court Remand; *Columbia Aluminum Products, LLC v. United States*, Ct. No. 19-00013 (Dep't Commerce Sept. 9, 2022) (Appx3020-38) (collectively, ("Third Remand Results"),[1] as affirmed by the U.S. Court of International Trade's ("CIT" or "court") final opinion and order in Worldwide Door Components, Inc. v. United States, Slip Op. 22-143 (Ct. Int'l Trade Dec. 16, 2022) ("Worldwide IV") (Appx68-84) and Columbia Aluminum Products, LLC v. United States, Slip Op. 22-144 (Ct. Int'l Trade Dec. 16, 2022) ("Columbia IV") (Appx151-68), which determined that door thresholds imported by Worldwide and Columbia, respectively, are not covered by the scope of the antidumping duty and

---

[1]    All administrative record citations are to the confidential version of the Joint Appendix ("Appx").

countervailing duty orders on aluminum extrusions from the People's Republic of China ("China").[2]

During the proceedings before the CIT, the court issued four opinions and orders, and Commerce issued three remand redeterminations, as discussed in detail below.

*The Scope of the Orders*

In relevant part, the scope of the AD/CVD Orders covers the following imports of aluminum extrusions:

> The merchandise covered by the orders is aluminum extrusions which are shapes and forms, produced by an extrusion process, made from aluminum alloys . . . Aluminum extrusions may also be fabricated, i.e., prepared for assembly . . .
>
> Subject extrusions may be described at the time of importation as parts for final finished products that are assembled after importation, including but not limited to, window frames, door frames, solar panels, curtain walls, or furniture. Such parts that otherwise meet the definition of aluminum extrusions are included in the scope. The scope includes the aluminum extrusion components that are attached (e.g., by welding or fasteners) to form subassemblies, i.e., partially assembled merchandise unless imported as part of the finished goods 'kit' defined further below. The scope does not include the non-

---

[2] See Aluminum Extrusions from the People's Republic of China, 76 Fed. Reg. 30,650 (Dep't Commerce May 26, 2011) (antidumping duty order) ("AD Order"); Aluminum Extrusions from the People's Republic of China, 76 Fed. Reg. 30,653 (Dep't Commerce May 26, 2011) (countervailing duty order) ("CVD Order") (collectively, "Orders").

> aluminum extrusion components of subassemblies or subject kits.
>
> Subject extrusions may be identified with reference to their end use, such as fence posts, electrical conduits, door thresholds, carpet trim, or heat sinks . . . Such goods are subject merchandise if they otherwise meet the scope definition, regardless of whether they are ready for use at the time of importation.
>
> . . .
>
> The scope also excludes finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, door with glass or vinyl, picture frames with glass panel and backing material, and solar panels.

AD Order, 76 Fed. Reg. at 30,650-51; CVD Order, 76 Fed. Reg. at 30,653-54.

*Scope Ruling Requests*[3]

**Columbia's Scope Ruling Request**

On March 14, 2018, Columbia filed a scope ruling request with Commerce seeking a determination that its imported assembled door thresholds are excluded from the scope of the Orders as "finished merchandise" based on the plain language of the Orders and prior Commerce scope determinations. Appx1752, Appx1755-60. Columbia further noted that although Commerce's scope language and prior scope

---

[3] For purposes of determining whether imported door thresholds are covered by the Orders, the products imported by Worldwide and by Columbia are nearly identical. To the extent there is a difference in the records as developed by each party, such differences are noted as appropriate throughout this brief.

determinations were dispositive and warranted the conclusion that the door thresholds at issue are excluded from the Orders, consideration of the *Diversified Products* criteria outlined in 19 C.F.R. § 351.225(k)(2) would lead Commerce to the same conclusion. Appx1760-63.

Columbia filed a supplement to its request on July 10, 2018, providing additional details about the door thresholds at issue, supplementing the arguments raised in its Scope Ruling Request, and responding to Commerce's April 7, 2018 supplemental questionnaire. Appx1837, Appx1845-52.

Columbia's request, as supplemented, covered the following series of assembled thresholds: (1) the IM 900 Plus Series, consisting of nine models in standard door widths (*i.e.* 30 inches, 32 inches, and 36 inches in length); (2) the IM 900 Plus Home Center Series, consisting of five models in standard door widths; (3) the 990 Series, consisting of six models in standard door widths; and (4) Series 122, 128, and 129 for a specific customer with widths corresponding to the customer's specifications. Appx1838-42, Appx1859-65. Columbia provided descriptions, pictures, and drawings for each of the assembled threshold series subject to the request. Appx1753-55, Appx1776-86, Appx1791-1800; see also Appx1838-40, Appx1842-44, Appx1859-65, Appx1948-2077, Appx2083-2100, Appx2143-50.

Columbia demonstrated in its request (and subsequent filings) that its imported assembled door thresholds are multi-component products fully and

permanently assembled before importation. Appx1753-55, Appx1776-86, Appx1791-1800; see also Appx1838-40, Appx1842-44, Appx1859-65, Appx1948-2077, Appx2083-2100. While each door threshold contains an aluminum extrusion plate, the aluminum component is not the principal contributor to the weight, value, or functionality of the finished threshold products. Appx1753-55, Appx1787-90; Appx1843-44, Appx1862-63, Appx2083-2100. Each threshold contains a continuous PVC sill composite and plastic screws (the risers) that allow the end-user to adjust the threshold. Appx1754, Appx1791-1800. Columbia's request explained that these non-aluminum components are fundamental to the functionality of the finished product and provide a competitive advantage in terms of weatherproofing and energy conservation. Appx1754-55; see also Appx1844. The non-aluminum components also substantially outweigh the aluminum component, in terms of cost and quantity of the finished merchandise. Appx1754-55, Appx1787-90; see also Appx1843-44, Appx2083-2100.

Columbia further demonstrated that the door thresholds Columbia enters are individually packaged, fully assembled, for immediate installation by end-users "as is" without the need for additional parts. Appx1753, Appx1761-63, Appx1810-20; Appx1842-43, Appx1845, Appx2078-82. They require no further finishing or manufacturing, such as cutting or punching. Appx1842-43, Appx1845. Indeed, Columbia's door thresholds subject to the scope request cannot be cut or undergo

further fabrication after import without compromising the functionality of the product.  Appx1845-48, Appx2133-42.

***Worldwide's Scope Ruling Request***

On August 3, 2018, Worldwide submitted a scope ruling request seeking a determination that the company's imported door threshold assemblies are not subject to the <u>Orders</u>.  <u>See generally</u> Appx208-46.  Worldwide's request demonstrated that the threshold assemblies are different from the aluminum extrusions included within the general scope language because they consist of aluminum and non-aluminum, non-extruded components that are fully completed at the time of import.  <u>See id.</u> The multiple and significant non-aluminum and non-extruded components in the threshold assemblies include synthetic plastic polymers, like polyvinyl chloride ("PVC"), polyethylene, polyurethane, and thermoplastic elastomer, wood, weatherstrips, and stainless steel.  Appx224-42.  In support of its ruling request, Worldwide stated (i) that the general scope language did not contemplate multi-component, assembled door thresholds and (ii) that, in any event, the exclusion for finished merchandise should apply as the threshold assemblies are fully and permanently assembled and ready for installation with no further manipulating at the time of import.  Appx210-14.

Worldwide's request covered 18 models of threshold assemblies that are covered by seven product groups:

| Group | Base Model Numbers | Components of Assembly(ies) |
|---|---|---|
| 1 | 99-496, 99-558 | Aluminum cap<br>PVC cap<br>PVC nose<br>Steel screws and washers<br>Plastic screw cover<br>PVC sill covers<br>PVC substrate<br>Gasket |
| 2 | 99-2240, 99-2241, 99-2242, 99-2243, 99-2244, and 99-2255 | Aluminum cover<br>PVC cap<br>PVC substrate |
| 3 | 99-2300, 99-2400 | Aluminum cover<br>Weatherstrip<br>PVC substrate<br>Wood top<br>Wood nose |
| 4 | 99-2911, 99-2912, 99-2930 | Aluminum cover<br>Weatherstrip<br>PVC substrate |
| 5 | 99-2861, 99-2961, 99-8100 | Aluminum cover<br>Aluminum top<br>PVC vinyl<br>Steel screws and washer<br>PVC substrate |
| 6 | 99-2970 | Aluminum cover<br>Weatherstrip<br>PVC cap |
| 7 | 99-3061 | Aluminum cover<br>Wood top<br>PVC vinyl<br>Steel screws and washers<br>PVC substrate |

Worldwide provided drawings for each of the 18 base models, photographs, and a report from a testing laboratory documenting how the threshold assemblies are mounted, in their imported form, for final use. Appx270-331. Worldwide also provided a declaration from its President and CEO confirming that none of the

threshold assemblies require further finishing, fabricating or cutting, or repackaging after import.  Appx506-507.

In addition to the scope ruling request, Worldwide submitted three supplemental questionnaire responses and comments responding to AEFTC's objections.  See Appx255-398; Appx489-508; Appx626-50.  For its part, AEFTC argued that the threshold assemblies were "inherently recognized" as in scope because "door thresholds" are listed as covered by the scope language.[4]  Appx408.  When considering the robust documentation and descriptions summarized above that Worldwide provided, AEFTC argued that the analysis begins and ends with the exemplary words "door threshold" in the scope language.  See Appx405-11.  It further argued that the threshold assemblies ultimately function as part of a door and are not a standalone product, which, it contended, renders the finished merchandise exclusion inapplicable.  See id.

Notably, AEFTC submitted a receipt from Lowe's and photo of a multi-component door threshold assembly, highly similar in composition to Worldwide's door thresholds, along with installation instructions.  Appx480-88.  AEFTC submitted the receipt and photo to argue that door thresholds, generally, are cut to

---

[4]    Endura Products, Inc. participated in the underlying scope ruling proceeding before Commerce and the subsequent Court of International Trade appeals as a domestic interested party, but is not participating in the appeal before this Court.

length and finished after importation, which Worldwide later demonstrated to be untrue for its specific door threshold.  AEFTC fails to realize that submission of the receipt and photos demonstrates that door thresholds of this nature are, in fact, a finished product for sale at retail stores.  Id.  Moreover, the instructions show that door thresholds are installed directly to the floor and are not, in every instance, assembled into a door frame.  Appx488.

Worldwide responded to AEFTC's comments by reiterating that there is a limit to the language in the scope, and that AEFTC cannot pretend that all door thresholds are identical and covered by the scope language, regardless of significant additional (and permanently affixed) components.  On one hand, there are door thresholds *consisting of essentially nothing more than an* aluminum extrusion, as contemplated by the petition and included in the scope:



Appx492.  On the other hand, Worldwide submitted detailed drawings and descriptions of its complex, multi-component assemblies that in no way resemble

the above.  Appx270-331.  Worldwide also cited previous scope rulings and court decisions in which AEFTC and Commerce had applied a two-part test to determine if the finished merchandise exclusion applied, where the issue was whether (a) the product consists of aluminum extrusions as parts, plus an additional non-extruded aluminum component, and (b) the product is fully and permanently assembled and completed at the time of entry such that it requires no further finishing or fabrication after importation.  <u>See</u> Appx969, Appx988-989 (summarizing Worldwide's arguments).

<u>*Commerce's Final Scope Ruling*</u>

In the final scope ruling, Commerce determined that the threshold assemblies were covered by the scope of the <u>Orders</u>.  <u>See</u> <u>Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the People's Republic of China: Final Scope Rulings on Worldwide Door Components Inc., MJB Wood Group Inc., and Columbia Aluminum Products Door Thresholds</u> (Dept. of Commerce, Dec. 19, 2018) ("<u>Final Scope Ruling</u>") (Appx969-1006).

Commerce initially determined that the threshold assemblies fell within the scope of the <u>Orders</u> primarily because they contain in-scope aluminum extrusions and are a type of door threshold.  <u>Final Scope Ruling</u> at 33 (Appx1001).  Commerce ruled pursuant to 19 C.F.R. § 351.225(k)(1), and found relevant that the petition in the underlying investigation listed as subject merchandise "aluminum extrusions that

are also identified as other goods," and provided "product examples" such as "carpet, window, or door thresholds; fence posts; heat sinks."  Appx1002-1003; Appx457-460.

Commerce did not dispute -- or even address -- that the examples of "door thresholds" from the original investigations in no way referred to finished goods comprised of aluminum and non-aluminum components, such as the threshold assemblies at issue here.

In reaching its decision, Commerce reviewed and summarized 12 separate scope rulings, seven of which found that certain products should be excluded, and six of those seven applied the finished merchandise exclusion to products that contained both extruded aluminum and non-aluminum components.  Yet Commerce refused to analyze the finished merchandise exclusion in any detail, finding it "inapposite" because the words "door threshold" appear in the scope language, and stated that to hold otherwise would "render the express inclusion of 'door thresholds' meaningless."  Appx1004.

### *Plaintiffs-Appellees' Appeals to the U.S. Court of International Trade*

Worldwide and Columbia filed separate appeals of the <u>Final Scope Ruling</u> at the CIT.  Each argued that the <u>Final Scope Ruling</u> was unlawful and unsupported by substantial evidence because Commerce simply identified the words "door thresholds" in the scope and then stopped its analysis.  Commerce's approach

rendered its assessment of the threshold assemblies under the general scope language wholly deficient in that it hardly acknowledged the impact of the additional components, and it failed to address how threshold assemblies could be "subassemblies," even though it appeared to give some unknown weight to this phrase. Above all, the agency failed to examine the scope exclusionary language for "finished merchandise," which both Worldwide and Columbia demonstrated clearly described the imported merchandise.

The CIT remanded the <u>Final Scope Ruling</u> for further consideration after finding that Commerce misinterpreted the scope language in three respects. <u>See</u> Appx1-17; Appx87-103. First, the court explained that Commerce misinterpreted the sentence in the scope that states "{s}ubject aluminum extrusions may be described at the time of importation as parts for final finished products that are assembled after importation, including, but not limited to, window frames, door frames, solar panels, curtain walls, or furniture" by failing to recognize that "at the time of importation" the threshold assemblies were not "subject aluminum extrusions" but rather were finished products that contain an aluminum extrusion as a component. Appx6-9; Appx92-95. Second, the court explained that Commerce's reliance on the scope's reference to "door thresholds" "overlooked that the subject of the sentence in the Orders is '{s}ubject extrusions,'" which does not cover the threshold assemblies. Appx8-9; Appx94-95.

13

Ultimately, the court held that Commerce erred by refusing to read the scope language in its entirety, e.g. by refusing to consider whether the threshold assemblies satisfied the requirements of the "finished merchandise" exclusion. Appx9-12; Appx95-98. On remand, the CIT ordered the agency to read the scope in its entirety and to consider whether the threshold assemblies satisfy the requirements of the "finished merchandise" exclusion. Appx16; Appx102.

*Commerce's First Remand Scope Ruling and CIT Proceeding*

On remand, Commerce continued to find that the threshold assemblies were within the scope of the Orders. See Final Results of Redetermination Pursuant to Court Remand; *Worldwide Door Components, Inc. v. United States,* Ct. No. 19-00012 (Dep't Commerce Dec. 23, 2020) (Appx1437-1474); Final Results of Redetermination Pursuant to Court Remand; *Columbia Aluminum Products, LLC v. United States*, Ct. No. 19-00013 (Dep't Commerce Dec. 23, 2020) (Appx2786-2834) (collectively, "First Remand Results"). Under protest, Commerce purported to consider the scope language as a whole to evaluate whether the "finished merchandise" exclusion applies. Appx1457-62; Appx2800-06. Commerce found, however, that the door thresholds were "partially assembled merchandise" and thus were not a fully and permanently assembled, completed final finished product that would qualify for the finished merchandise exclusion. Appx1459. In other words, Commerce reached a conclusion about the nature of the threshold assemblies

themselves to conclude that they did not qualify for the finished merchandise exclusion. Appx1456-61; Appx2795-2812. What Commerce did not do in the <u>First Remand Results</u> was apply the actual language of the finished merchandise exclusion to Worldwide's and Columbia's products to evaluate whether that exclusion applied.

Upon reviewing the <u>First Remand Results</u>, the CIT ordered a second remand and held that Commerce's analysis of the finished merchandise exclusion failed to consider relevant and material record evidence that contradicted its determination that the threshold assemblies are subject to the scope of the <u>Orders</u>. Appx19-20, Appx36-44; Appx104-05, Appx114-26. Specifically, when determining that Worldwide's and Columbia's respective "'door thresholds do not function on their own, but rather are incorporated into a larger downstream product,'" e.g. a "'completed door unit,'" (Appx36-37; Appx116-17), Commerce simply adopted general evidence about door thresholds submitted by AEFTC but failed to consider evidence on the record that Worldwide's and Columbia's respective threshold assemblies do not undergo further cutting or machining prior to use, as this fact would significantly determine whether or not Plaintiffs-Appellees' door threshold assemblies qualify as finished merchandise within the meaning of the scope. Appx36-40; Appx114-20. In other words, Commerce failed to consider record evidence that fairly detracts from its decision.

*Commerce's Second Remand Scope Ruling and CIT Proceeding*

Commerce conducted the Second Remand Results under protest and, changing course, found that the threshold assemblies are outside the scope of the Orders.    See Final Results of Redetermination Pursuant to Court Remand; *Worldwide Door Components, Inc. v. United States*, Ct. No 19-00012 (Dep't Commerce Dec. 13, 2021) (Appx1589-1604); Final Results of Redetermination Pursuant to Court Remand; *Columbia Aluminum Products, LLC v. United States*, Ct. No. 19-00013 (Dep't Commerce Dec. 13, 2021) (Appx2932-48) (collectively, "Second Remand Results").

Upon judicial review, the CIT held that the Second Remand Results were not in a form that the court could sustain because Commerce had stated that if the court were to sustain the Second Remand Results, Commerce "would issue a new scope ruling."  Appx47; Appx130.  The CIT held that "{u}nder this proposal, Commerce would issue its final ruling outside of the court's direct review."  Appx47; Appx130. The court ordered Commerce to issue a new scope ruling that would go into effect if sustained upon judicial review.  Appx66-67; Appx149-50.

In addition, the court held that Commerce's substantive findings in the Second Remand Results misinterpreted the court's ruling in Worldwide II and Columbia II by claiming that the court had made certain factual findings regarding the applicability of the scope language to the threshold assemblies that it then ordered

Commerce to adopt. Appx61-65; Appx145-49. In <u>Worldwide III</u> and <u>Columbia III</u> the court confirmed that it did not substitute its judgment for that of the agency, but rather remanded for Commerce to reach a determination based on the scope language as a whole and, in doing so, to account for all relevant, material record evidence. Appx63-65; Appx147-49.

<u>*Commerce's Third Remand Scope Ruling and CIT Proceeding*</u>

In the <u>Third Remand Results</u>, Commerce continued to find that the threshold assemblies are excluded from the <u>Orders</u> under the finished merchandise exclusion. Appx1698-1717; Appx3020-38. Commerce made two critical findings of fact: (1) the threshold assemblies are fully assembled and completed at the time of entry based on record evidence submitted by Worldwide, including an affidavit from the company's President and CEO, and record evidence submitted by Columbia, and (2) the threshold assemblies contain both extruded aluminum and non-aluminum components, thereby placing them outside of the scope language covering "door thresholds" made of "subject extrusions" and qualifying them for the finished merchandise exclusion. Appx1710-13, Appx1715-16; Appx3033-34. These factual determinations were supported by substantial evidence in the record and were not contradicted by any evidence in the record. Appx1710-13, Appx1715-16; Appx3033-34. The CIT sustained the <u>Third Remand Results</u> as supported by

substantial evidence and in accordance with law and entered judgment in favor of

Worldwide and Columbia.  Appx68-86; Appx165-70.

AEFTC now appeals to this Court and argues the Final Scope Ruling should

be reinstated.

## SUMMARY OF THE ARGUMENT

Appellant's argument in support of Commerce's original scope determination

is unlawful and is contradicted by record evidence.  Rather, once Commerce read

the scope language in its entirety and considered all material evidence, it concluded

that Appellees' door threshold assemblies are not subject to the scope of the Orders

because they satisfy the finished merchandise exclusion.

First, Appellant's position rests on an incomplete reading of the scope that

ignores the finished merchandise exclusion and is therefore unlawful.  The scope

language is the cornerstone of Commerce's analysis, a fundamental point confirmed

by both this Court's precedent and Commerce's regulations.  In the Final Scope

Ruling, Commerce refused to consider the finished merchandise exclusion, finding

it "inapposite," and based its conclusion that Appellees' products are subject to the

scope on a cursory reading of only the inclusionary scope language regarding end

use.  Commerce's refusal to the read the scope language in its entirety renders the

Final Scope Ruling, and Appellant's argument that the threshold assemblies are

covered by the Orders, unlawful.  Indeed, the very purpose of exclusionary language

is to carve out an exclusion for a product that may otherwise be covered by the inclusionary scope language.

Second, Appellant's argument ignores uncontested material record evidence demonstrating that threshold assemblies comprised of both extruded and non-extruded aluminum parts, unlike "subject aluminum extrusions" covered by the Orders, are fully assembled at the time of entry, complete with all of the necessary components to be ready for installation within a door frame, or residential or commercial building without any further finishing or fabrication. The Orders' scope "excludes finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, door with glass or vinyl, picture frames with glass panel and backing material, and solar panels." The exclusionary language describes precisely Appellees' products. Commerce ignored this record evidence pertaining to Appellees' specific products in the First Remand Results, instead relying only upon evidence submitted by AEFTC that certain door thresholds can "generally" be further processed after importation.

In the Third Remand Results, Commerce, for the first time, both read the scope language in its entirety and considered all material record evidence pertaining to Appellees' products. This led Commerce to reach the only conclusion that is

supported by both law and fact -- that Appellees' threshold assemblies are excluded from the scope because they satisfy the finished merchandise exclusionary language.

## ARGUMENT

## I.    STANDARD OF REVIEW

A reviewing court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law.    19 U.S.C. § 1516a(b)(1)(B)(i).  "The Federal Circuit reviews Commerce's anti-dumping orders using the same standard of review used by the Court of International Trade."  NMB Singapore Ltd. v. United States, 557 F.3d 1316, 1319 (Fed. Cir. 2009) (citing NSK Ltd. v. United States, 481 F.3d 1355, 1359 (Fed. Cir. 2007); NTN Bearing Corp. of Am. v. United States, 368 F.3d 1369, 1372 (Fed. Cir. 2004)).  Nevertheless, this Court "'give{s} great weight to the informed opinion of the Court of International Trade. . . ."  Ningbo Dafa Chem. Fiber Co. v. United States, 580 F.3d 1247, 1253 (Fed. Cir. 2009) (quoting Nippon Steel Corp. v. United States, 458 F.3d 1345, 1351 (Fed. Cir. 2006)); Altx, Inc. v. United States, 370 F.3d 1108, 1116 (Fed. Cir. 2004) ("'{T}he opinion of the Court of International Trade deserves 'due respect.'") (citation omitted).

**II.    COMMERCE'S FINDING THAT THRESHOLD ASSEMBLIES ARE EXCLUDED FROM THE SCOPE OF THE ORDERS IS LAWFUL AND SUPPORTED BY SUBSTANTIAL RECORD EVIDENCE**

### A.    Legal Framework for Scope Proceedings

Congress granted Commerce the authority to issue scope rulings to clarify "whether a particular type of merchandise is within the class or kind of merchandise described in an existing" antidumping or countervailing duty order.  19 U.S.C. § 1516a(a)(2)(B)(vi).  There is no specific statutory framework that governs the conduct of scope proceedings.  See Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States, 776 F.3d 1351, 1354 (Fed. Cir. 2015).  To fill that statutory gap, Commerce promulgated regulations describing a two-step process for issuing scope decisions.  See 19 C.F.R. § 351.225(k).

The scope language itself is the starting point of Commerce's analysis.  19 C.F.R. § 351.225(k)(1) ("In determining whether a product is covered by the scope of the order at issue, the Secretary will consider the language of the scope and may make its determination on this basis alone if the language of the scope, *including the descriptions of merchandise expressly excluded from the scope*, is dispositive.") (emphasis added).[5]    Commerce may also examine the descriptions of the

---

[5]    Commerce added this language to 19 C.F.R. § 351.225(k)(1) in September 2021 to bring the regulation into conformity with the Federal Circuit's holdings, and thus it was in effect when Commerce issued the Second Remand Results and Third Remand Results.  See Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws, 86 Fed. Reg. 52,300, 52,322 (Dep't

merchandise contained in the petition, descriptions of the merchandise contained in

the initial investigation, previous or concurrent determinations of the Commerce

Secretary, including prior scope rulings, memoranda, or clarifications pertaining to

both the order at issue, and U.S. International Trade Commission ("Commission")

determinations pertaining to the order at issue, including reports issued pursuant to

the Commission's initial investigation. <u>Id.</u> at § 351.225(k)(1)(i). If examination of

those sources does not resolve the question of whether the merchandise is covered

by the scope, Commerce may then look to additional factors enumerated in 19 C.F.R.

§ 351.225(k)(2).[6]

   In addition to Commerce's regulatory authority, this Court has held that the

scope language is the "cornerstone" of Commerce's analysis and "a predicate for the

interpretative process." <u>Duferco Steel, Inc. v. United States</u>, 296 F.3d 1087, 1097

(Fed. Cir. 2002). If the language of the scope is unambiguous, it governs; if the

---

Commerce Sept. 20, 2021) ("Commerce added a chapeau to the beginning of the
provision which articulated that Commerce will first and foremost consider the
language contained in the scope of an AD or CVD order in determining whether or
not a product is covered by that AD or CVD order. Commerce explained that it was
adding this language to § 351.225(k) to reflect an additional analysis that Commerce
had applied in multiple cases, and was then affirmed by the Federal Circuit, which
is that "'a predicate for the interpretive process is language in the order that is subject
to interpretation." The scope of the order can be clarified but it cannot be changed
by the interpretive process' and that scope 'orders are interpreted under
[§ 351.225(k)] with the aid of the antidumping petition, investigation, and
preliminary order.'" (citing <u>Tak Fat Trade Co. v. United States</u>, 396 F.3d 1378,
1382-1383 (Fed. Cir. 2005) (citing <u>Duferco Steel, Inc. v. United States</u>, 296 F.3d
1087, 1097 (Fed. Cir. 2002))).

[6]    The factors listed in 19 C.F.R. § 351.225(k)(2) are not at issue in this appeal
because Commerce conducted its analysis pursuant to 19 C.F.R. § 351.225(k)(1).

language of the scope is ambiguous, then the other sources listed in 19 C.F.R. § 351.225(k) may be consulted.  See Mid Continent Nail Corp. v. United States, 725 F.3d 1295, 1302 (Fed. Cir. 2013); ArcelorMittal Stainless Belgium N.V. v. United States, 694 F.3d 82, 87 (Fed. Cir. 2012).  "{T}he question of whether the unambiguous terms of a scope control the inquiry, or whether some ambiguity exists, is a question of law that {the Court} reviews de novo." Meridian Products, LLC v. United States, 851 F.3d 1375, 1382 (Fed. Cir. 2017) (citing Allegheny Bradford Corp. v. United States, 342 F. Supp. 2d 1172, 1183 (Ct. Int'l Trade 2004) ("{A} scope determination is not in accordance with the law if it changes the scope of an order or interprets an order in a manner contrary to the order's terms.") (citations omitted)).  Whether a product meets the unambiguous scope language is a question of fact that the Court reviews for substantial evidence.  Id. (citing Novosteel SA v. United States, 284 F.3d 1261, 1269 (Fed. Cir. 2002)).

### B.    Commerce Must Read the Scope Language in Its Entirety

Appellant argues that the Final Scope Ruling should be reinstated because Commerce correctly found that door thresholds are expressly included in the scope language and the CIT impermissibly substituted its judgment for that of the agency in ordering remand.  See AEFTC Br. at 19-29.  To support this analysis, Appellant urges the Court to fixate only on a snippet of the inclusionary language of the scope that references "door thresholds" and to ignore completely the finished merchandise

exclusionary scope language. <u>Id.</u> at 19. Appellant's claim that this Court should sustain a partial and incomplete reading of the scope is untenable.

The <u>Final Scope Ruling</u> is unlawful because Commerce partially read the scope and refused to consider the exclusionary language for finished merchandise in its analysis. The scope language is the cornerstone of any scope analysis and Commerce must consider the scope language *in its entirety* as the first step in its inquiry. <u>See</u> 19 C.F.R. § 351.225(k)(1); <u>Duferco Steel</u>, 296 F.3d at 1097; <u>see also</u> <u>Meridian Products, LLC v. United States</u>, 890 F.3d 1272, 1277 (Fed. Cir. 2018) ("{T}he plain language of an antidumping duty order is 'paramount' in determining whether particular products are included within its scope.") (citing <u>King Supply Co.</u> <u>v. United States</u>, 674 F.3d 1343, 1345 (Fed. Cir. 2012)). Indeed, the very purpose of exclusionary language is to carve out an exclusion for a product that may otherwise be covered by the inclusionary scope language. <u>See</u> <u>Legacy Classic</u> <u>Furniture, Inc. v. United States</u>, 867 F. Supp. 2d 1321, 1330 (Ct. Int'l Trade 2012) ("Because the scope language of an order starts with general inclusions and then carves out specific exclusions, when a product is generally included in a residual provision but yet specifically excluded from the scope, the specific should trump the general. The purpose of the explicit exclusions is to narrow the expanse of the general scope. Unequivocal exclusions are not loopholes; they are argued for and

intentionally omitted from the scope.") (citing <u>Wheatland Tube Co. v. United States</u>, 161 F.3d 1365, 1371 (Fed. Cir. 1998)).

Commerce acknowledged Appellees' arguments that the finished merchandise exclusion applied to the threshold assemblies and excluded them from the <u>Orders</u> (Appx976, Appx980, Appx982), but decided that it need not even consider the finished merchandise exclusion after finding the threshold assemblies to be in-scope. Appx1003-1004 ("{W}e find the express inclusion of 'door thresholds' within the scope of the Orders (regardless of whether the door thresholds are ready for use at the time of importation) renders the reliance of Worldwide, MJB, and Columbia upon the finished merchandise exclusion inapposite.").[7] Thus, Commerce considered only the inclusionary language of the scope, and ignored the exclusions.

The failure to read the entire scope is even more egregious because Commerce claimed to conduct the scope ruling pursuant to 19 C.F.R. § 351.225(k)(1), which, at the time the <u>Final Scope Ruling</u> was issued, provided that "in considering whether a particular product is included within the scope of an order { }, the Secretary will take into account the following: (1) The descriptions of the merchandise contained

---

[7]   There is no dispute that the threshold assemblies at issue in this proceeding are not simply aluminum extrusions; rather, the undisputed record confirms that the threshold assemblies are multi-component products that merely contain an aluminum extrusion as a part and that are fully and permanently assembled and completed at the time of entry.

in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the Commission." 19 C.F.R. § 351.225(k)(1) (2018 version); see also Appx976. According to Commerce, the Final Scope Ruling examined "previous scope rulings, the Petition and supplements therefore, and the ITC report" to find that "the descriptions of the products, the scope language, and prior rulings, together, are dispositive as to whether the products at issue are subject merchandise." Appx1000.

Before consulting these various sources in its "(k)(1)" analysis, however, Commerce must read and address the scope language *in full*.[8] Commerce bypassed this fundamental step. Its refusal to read the scope in its entirety renders the Final Scope Ruling unlawful and invalid, such that the CIT was correct to issue remand instructions ordering Commerce to consider the scope of the Orders as a whole. Appx1-16; Appx87-102.

Appellant cites no authority to support the position that Commerce is permitted to read only part of the scope in rendering a decision. Moreover, as next

---

[8]    When the Final Scope Ruling was published in December 2018, 19 C.F.R. § 351.225(k)(1) did not include the "chapeau" language reflecting that "Commerce will first and foremost consider the language contained in the scope of an AD or CVD order in determining whether or not a product is covered by that AD or CVD order." See supra n.5; see also Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws, 86 Fed. Reg. at 52,322. At that time, however, Federal Circuit precedent clearly established that the scope language was the cornerstone of a scope analysis and, if dispositive, governs. See, e.g., Mid Continent Nail Corp., 725 F.3d at 1302; ArcelorMittal Stainless Belgium N.V., 694 F.3d at 87; Meridian Products, LLC, 851 F.3d at 1382.

discussed, to reach the conclusion that the threshold assemblies are covered by the scope language Commerce failed to consider relevant and material record evidence.

### C. The Unambiguous Scope Language Demonstrates that the Finished Merchandise Exclusion Applies to the Threshold Assemblies

The plain language of the scope is the cornerstone of Commerce's scope analysis. Duferco Steel, 296 F.3d at 1097. Here, the scope's plain language demonstrates that the finished merchandise exclusion applies to the threshold assemblies and excludes them from the Orders. In the Third Remand Results, Commerce, for the first time, read the scope language *in its entirety* and considered all relevant, material record evidence. Appx1710-13, Appx1715-16; Appx3033-35. Once the agency took these two necessary steps, it concluded that the threshold assemblies were excluded from the Orders by the finished merchandise exclusion.

The scope of the Orders "excludes finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, door with glass or vinyl, picture frames with glass panel and backing material, and solar panels." AD Order, 76 Fed. Reg. at 30,651; CVD Order, 76 Fed. Reg. at 30,654. The exclusionary language unambiguously describes the merchandise at issue here.

Critical to this appeal is the fact that the nature of the threshold assemblies subject to the scope ruling is not in dispute. They are comprised of both extruded

and non-extruded aluminum parts, unlike "subject aluminum extrusions" covered by the Orders.  Appx1710-13, Appx1715-16; Appx3033-35, Appx3036-37.  Record evidence confirms that Worldwide's and Columbia's respective threshold assemblies are fully assembled at the time of entry, complete with all of the necessary components to be ready for installation within a door frame, or residential or commercial building without any further finishing or fabrication.  Appx209-10; see also Appx1753-55, Appx1761-63, Appx1810-20; Appx1842-43, Appx1845-48, Appx2078-82, Appx2133-42.

While Appellant does not dispute the physical nature of the product, it draws the wrong conclusion that "{t}here is no real dispute that a door threshold is a part for a final door frame or door."  AEFTC Br. at 19.  To the contrary, the threshold assemblies are not "parts," but are finished merchandise "ready for use without further processing and that cannot be cut to custom sizes without destroying the thresholds' functionality."[9]  Appx506-507; see also Appx1845-48, Appx2133-42.

---

[9]    AEFTC's argument fails to recognize that the non-exhaustive exemplars of excluded "finished merchandise" in the Orders includes windows with glass, doors with glass or vinyl, and solar panels, all of which can be used in connection with other products.  Left unexplained is how a threshold assembly (made from extruded aluminum and non-extruded aluminum components) is a "part of a door" and not subject to the finished merchandise exclusion, but a "door with glass or vinyl" is not a "part of a door" and thus is subject to the finished merchandise exclusion.  AEFTC cannot have it both ways.  Just like the non-exhaustive list of finished merchandise exemplars, the subject threshold assemblies meet the requirements of finished merchandise and are excluded from the scope of the Orders.

When concluding in the <u>First Remand Results</u> that the threshold assemblies are covered by the scope language, Commerce did not address this undisputed and material evidence regarding the nature of the product.  For example, Commerce accepted Appellant's claim that door thresholds are usually customizable after importation, but ignored evidence that Worldwide's and Columbia's threshold assemblies are ***not*** further processed after importation, leading the CIT to remand a second time.  Appx38 ("While identifying evidence submitted by the petitioner and Endura referring generally to door thresholds, Commerce does not bring to the court's attention evidence that the articles actually at issue in this litigation are so designed and manufactured as to require cutting or machining prior to use."); <u>see also</u> Appx120 (same).  In fact, AEFTC even submitted a receipt from Lowe's along with photos of a threshold and installation instructions.  <u>See</u> Appx480-488.  The receipt and photos prove that this variety of door threshold assembly is, in fact, a finished product for sale at retail stores.  <u>Id.</u>  Moreover, the installation instructions demonstrate that the threshold is installed directly to the floor; there is no reference of integration into or connection to a door frame as Appellant claims.  Appx488; AEFTC Br. at 19.

Once the scope is read in its entirety and all material evidence examined, the only conclusion to reach is that the threshold assemblies are finished merchandise and are excluded from the scope of the <u>Orders</u>.

**D.**     **Appellant Misreads and Misapplies Prior Court Decisions**

Appellant's discussion of the facts involved in this appeal is minimal. AEFTC Br. at 19, 27-28. Appellant instead focuses on past court decisions involving the AD/CVD orders on imports of aluminum extrusions. Appellant misreads these decisions and misapplies them here by ignoring material facts on the record. AEFTC Br. at 19-28. Contrary to Appellant's claim, it is the <u>Final Scope Ruling</u>, not the <u>Third Remand Results</u>, that is inconsistent with precedent.

Both <u>China Custom Mfg. Inc. v. United States</u>, 61 F.4th 956 (Fed. Cir. 2023) ("<u>China Custom Mfg.</u>") and <u>Shenyang Yuanda Aluminum Industry Engineering Co. v. United States</u>, 776 F.3d 1351 (Fed. Cir. 2015) ("<u>Shenyang I</u>") support the remand redetermination that the threshold assemblies are not covered by the scope. In analyzing the finished merchandise exclusion in <u>Shenyang I</u>, the Court noted that "Yuanda itself concedes that 'absolutely no one purchases for consumption a single curtain wall piece or unit.'" <u>Shenyang I</u>, 776 F.3d at 1358. The Court went on to explain that "{a} single unit does not a curtain wall make, nor is it a finished product." <u>Id.</u> The same is true of the product at issue in <u>China Custom Mfg.</u>, wherein the Court explained that "the mounts have no use outside of the specific solar panel mounting system. . . ." <u>China Custom Mfg.</u>, 61 F.4th at 961.

The opposite factual scenario is present here. The undisputed record confirms that threshold assemblies are available for purchase at retail stores to be directly

installed by consumers to the floor, not into a downstream system or product. See Appx480-488; Appx1810-20. Unlike the products at issue in China Custom Mfg. and Shenyang I, the threshold assemblies are also "ready for use without further processing and { } cannot be cut to custom sizes without destroying the thresholds' functionality." Appx506-507; see also Appx1845-48, Appx2133-42.

Moreover, in both opinions that AEFTC champions, this Court held that the "parts or subassemblies" in those cases were not finished products and thus "cannot qualify for the finished merchandise exclusion." China Custom Mfg., 61 F.4th at 960; see also Shenyang I, 776 F.3d at 1359. Because the Third Remand Results correctly concluded that Appellees' threshold assemblies are finished merchandise, and not parts or subassemblies, China Custom Mfg. and Shenyang I do not control the outcome of this appeal. In China Custom Mfg. the imported solar panel mounts were subassemblies and one component of a downstream solar panel mounting system, and in Shenyang I the imported curtain wall units were assembled after importation to form curtain walls. China Custom Mfg., 61 F.4th at 961-62; Shenyang I, 776 F.3d at 1356-57.

Here, by contrast, once Commerce read the entire scope and examined all material record evidence, it concluded that Worldwide's and Columbia's "door thresholds meet this requirement of the finished merchandise exclusion, because they contain non-extruded aluminum components, as well as aluminum extrusions

'as parts'" and "enter the United States as fully and permanently assembled and completed products." Appx1711-12; Appx3033-35.

Appellant ignores the critical facts: the door thresholds are imported as a final product, are not subject to any further processing after importation and before installation, and as the Lowe's receipt and photos demonstrate, are available for retail sale and direct installation to the floor, not into a door frame system. Appx480-88. Because the facts presented here are distinguishable, <u>China Custom Mfg.</u> and <u>Shenyang I</u> do not compel the outcome Appellant seeks.

Nor do this Court's rulings in <u>Meridian Products, LLC v. United States</u> and <u>Whirlpool Corp. v. United States</u> support Appellant's position. 890 F.3d 1272 (Fed. Cir. 2018); 890 F.3d 1302 (Fed. Cir. 2018). <u>Meridian</u> involved the question of whether imported handles, made of extruded aluminum, and packaged with plastic fasteners for oven doors, are covered by the AD/CVD Orders. The Court's decision did not resolve the question of applicability of the finished merchandise exclusion because it remained unclear "whether the Type B handles are fully and permanently assembled at the time of entry," leading the Court to remand for clarification. <u>Meridian</u>, 890 F.3d at 1281-82. That question is answered in this case – the threshold assemblies are fully and permanently assembled at the time of entry, and undergo no further processing before installation.

In <u>Whirlpool</u>, this Court stated that the "Orders explicitly include aluminum extrusions 'that are assembled after importation' in addition to 'aluminum extrusion components that are attached (e.g., by welding or fasteners) to form subassemblies.'" 890 F.3d at 1309. Neither of those conditions is present here – the threshold assemblies are not assembled after importation, and indeed undergo no further processing after importation. The assembled thresholds are instead merchandise that merely contains an aluminum extrusion component along with non-aluminum components that are fully and permanently assembled and completed at the time of entry, *i.e.*, finished merchandise. Because Commerce had not reached the question of applicability of the finished merchandise exclusion in the remand findings subject to appeal in <u>Whirlpool</u>, instead finding that the general scope language did not cover the product at issue, the Court's decision is <u>Whirlpool</u> is of limited guidance here. <u>Id.</u> at 1311. Notably, however, the Court's analysis included a review of the *entire* scope, inclusionary and exclusionary language, thereby reinforcing the proposition that the scope must be read as a whole. <u>Id.</u> at 1308 ("We begin our discussion with the Orders' general scope language followed by the express exclusions from that general scope.").

Appellant attempts to minimize the significant factual distinctions in this case versus those present in <u>Meridian Products</u> and <u>Whirlpool Corporation</u>. <u>See</u> AEFTC Br. at 21 n.7. The distinctions are vital to understanding why this case is different.

Although the physical description of Appellees' threshold assemblies is undisputed, it is quite relevant that the product at issue here is a threshold assembly made up of both aluminum extrusions and non-extruded aluminum components to create finished merchandise.  By contrast, in Meridian the handles "alone consist of extruded aluminum products that meet the physical descriptions of merchandise subject to the order" such that the question presented was "whether the plastic end caps remove the Type B handles from the general scope."  Meridian, 890 F.3d at 1278.  Similarly, in Whirlpool the handles were made of extruded aluminum and merely included plastic end caps.  Whirlpool, 890 F.3d at 1306.  Scope determinations are by nature fact-based inquiries to determine whether a product is covered by a scope.  See, e.g., Fedmet Res. Corp. v. United States, 755 F.3d 912, 919–22 (Fed. Cir. 2014).  As a matter of fact, the products at issue in Meridian and Whirlpool are distinguishable from Appellees' threshold assemblies.  The fact that the finished merchandise exclusion did not apply in Meridian and Whirlpool is in no way precedential on the question of whether the finished merchandise exclusion applies in this case.

This Court's decision in Perfectus Aluminum, Inc. v. United States, while non-precedential, is relevant to (and distinguishable from) this case.  Perfectus Aluminum, Inc. v. United States, 836 Fed. Appx. 883 (Fed. Cir. 2020).  In that appeal, an importer argued that Series 6xxx Pallets qualified for the finished

merchandise exclusion because they contain aluminum extrusions as parts and are permanently assembled and completed at the time of entry. Id. at 888. In ruling that the pallets do not qualify for the exclusion, the Court explained that "Perfectus's interpretation would allow the finished merchandise exclusion to swallow the rule established by the AD/CVD Orders and invite abuse" because the pallets were made entirely from aluminum extrusions even though there were different "parts" making up the pallets. Id. at 889.

Here, by contrast, the door thresholds are made up of both aluminum extrusions and other parts not made of aluminum extrusions. The Court in Perfectus specifically noted that the all the exemplary products falling under the finished merchandise exclusion, while not an exhaustive list, "contain parts made from other materials that are not aluminum extrusions." Id. at 889. Given the distinctions in product type, the concerns expressed by the Court in Perfectus regarding the finished merchandise exclusion are not present in this appeal. Indeed, the Court's holding that "in order to qualify for the finished merchandise exclusion a product must include parts made from other materials that are not aluminum extrusions," id. at 889-90, supports the Third Remand Results finding that the door thresholds qualify for the exclusion in this case.

Thus, the <u>Third Remand Results</u> are based on a reading of the scope that is consistent with prior court decisions, whereas the <u>Final Scope Ruling</u> is incompatible with precedent.

## III.    <u>CONCLUSION</u>

For the above reasons, Appellees respectfully request that this Court affirm Commerce's ruling that imported door threshold assemblies are outside the scope of the <u>Orders</u> on aluminum extrusions as supported by substantial evidence and otherwise in accordance with law.

Respectfully submitted,

/s/ John M. Foote
JOHN M. FOOTE
MELISSA M. BREWER

Kelley Drye & Warren LLP
3050 K Street, NW, Suite 400
Washington, DC 20007
(202) 342-8413
JFoote@kelleydrye.com
MBrewer@kelleydrye.com
Counsel to Plaintiff-Appellee
Worldwide Door Components, Inc.

/s/ Jeremy W. Dutra
JEREMY W. DUTRA

Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, DC 20037
(202) 626-6237
jeremy.dutra@squirepb.com

Counsel to Plaintiff-Appellee
Columbia Aluminum Products, LLC

Dated:  August 8, 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2023-1532, 2023-1534

**Short Case Caption:** Worldwide Door Components, Inc. v. United States

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 7,642 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 08/08/2023

Signature: /s/ John M. Foote

Name: John M. Foote