NON-CONFIDENTIAL VERSION

2023-1532, 2023-1534

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

WORLDWIDE DOOR COMPONENTS, INC.,
*Plaintiff – Appellee*

v.

UNITED STATES, ENDURA PRODUCTS, INC.,
*Defendants*

ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,
*Defendant – Appellant*

COLUMBIA ALUMINUM PRODUCTS, LLC,
*Plaintiff – Appellee*

v.

UNITED STATES, ENDURA PRODUCTS, INC.,
*Defendants*

ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,
*Defendant – Appellant*

Consolidated Appeals from the United States Court of International Trade in Case Nos. 1:19-CV-00012 and 1:19-CV-00013, Judge Timothy C. Stanceu

## REPLY BRIEF OF DEFENDANT-APPELLANT
## ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE

Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Enbar Toledano, Esq.
Elizabeth S. Lee, Esq.

**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
202-719-7000

*Counsel to the Aluminum Extrusions Fair Trade Committee*

Dated: August 29, 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2023-1532 |
| **Short Case Caption** | Worldwide Door Components, Inc. v. US |
| **Filing Party/Entity** | Aluminum Extrusions Fair Trade Committee - Defendant-Appellant |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 03/09/2023

Signature:  /s/ Robert E. DeFrancesco, III

Name:  Robert E. DeFrancesco, III

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. <br><br> ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. <br><br> ☐ None/Not Applicable |
| Aluminum Extrusions Fair Trade Committee <br> whose individual members are detailed on the attached form. | | See attachment. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☑    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐  None/Not Applicable                    ☐  Additional pages attached

| | | |
|---|---|---|
| Claire M. Webster | | |
| Cynthia C. Galvez | | |
| Elizabeth V. Baltzan | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below)    ☐ No    ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable                    ☐  Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

Save for Filing

## 1. Represented Entities

The individual members of the Aluminum Extrusions Fair Trade Committee (the "Committee") are as follows: Alexandria Extrusion Company; William L. Bonnell Company, Inc. ("Bonnell"); Extrusion North America at Hydro; Kaiser Aluminum Corporation; Merit Aluminum; and Western Extrusions Corporation. The Committee notes that Bonnell acquired original petitioning member Futura Industries Corporation ("Futura") in early 2017, and Futura is now a wholly-owned subsidiary of Bonnell. In addition, in October 2017, Norsk Hydro ASA acquired Orkla ASA's 50% ownership in Sapa AS, giving Norsk Hydro ASA full ownership of Sapa AS. Sapa AS changed its name to Hydro Extruded Solutions AS and is now a business unit within Norsk Hydro ASA called Extruded Solutions. Further, Benada Aluminum of Florida, Inc., while an original member of the petitioning Committee, has left the Aluminum Extruders Council and is no longer a member of the Committee. Astro Shapes, LLC purchased original petitioning member Aerolite Extrusion Company but has since left the Committee. Original petitioning member Frontier Aluminum Corporation changed its name to Merit Aluminum but remains the same corporate entity.

## 3. Parent Corporations and Stockholders

Futura is a wholly-owned subsidiary of Bonnell, and Bonnell is a wholly-owned subsidiary of Tredegar Corporation. The following publicly-traded companies owns 10% or more of the shares in Tredegar Corporation: BlackRock, Inc. and GAMCO Investors, Inc.

Extrusion North America at Hydro is a wholly-owned subsidiary of Norsk Hydro ASA.

The following publicly-traded company owns 10% or more of the shares in Kaiser Aluminum Corporation: BlackRock, Inc.

**FORM 9. Certificate of Interest**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---:|:---|
| **Case Number** | 2023-1534 |
| **Short Case Caption** | Columbia Aluminum Products, LLC v. US |
| **Filing Party/Entity** | Aluminum Extrusions Fair Trade Committee - Defendant-Appellant |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 03/09/2023

Signature: /s/ Robert E. DeFrancesco, III

Name: Robert E. DeFrancesco, III

FORM 9. Certificate of Interest

| 1. **Represented Entities.**<br>Fed. Cir. R. 47.4(a)(1). | 2. **Real Party in Interest.**<br>Fed. Cir. R. 47.4(a)(2). | 3. **Parent Corporations and Stockholders.**<br>Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Aluminum Extrusions Fair Trade Committee | | See attachment. |
| whose individual members are detailed on the attached form. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☑     Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Claire M. Webster | | |
| Cynthia C. Galvez | | |
| Elizabeth V. Baltzan | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below)   ☐ No   ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

Save for Filing

**1. Represented Entities**

The individual members of the Aluminum Extrusions Fair Trade Committee (the "Committee") are as follows: Alexandria Extrusion Company; William L. Bonnell Company, Inc. ("Bonnell"); Extrusion North America at Hydro; Kaiser Aluminum Corporation; Merit Aluminum; and Western Extrusions Corporation. The Committee notes that Bonnell acquired original petitioning member Futura Industries Corporation ("Futura") in early 2017, and Futura is now a wholly-owned subsidiary of Bonnell. In addition, in October 2017, Norsk Hydro ASA acquired Orkla ASA's 50% ownership in Sapa AS, giving Norsk Hydro ASA full ownership of Sapa AS. Sapa AS changed its name to Hydro Extruded Solutions AS and is now a business unit within Norsk Hydro ASA called Extruded Solutions. Further, Benada Aluminum of Florida, Inc., while an original member of the petitioning Committee, has left the Aluminum Extruders Council and is no longer a member of the Committee. Astro Shapes, LLC purchased original petitioning member Aerolite Extrusion Company but has since left the Committee. Original petitioning member Frontier Aluminum Corporation changed its name to Merit Aluminum but remains the same corporate entity.

**3. Parent Corporations and Stockholders**

Futura is a wholly-owned subsidiary of Bonnell, and Bonnell is a wholly-owned subsidiary of Tredegar Corporation. The following publicly-traded companies owns 10% or more of the shares in Tredegar Corporation: BlackRock, Inc. and GAMCO Investors, Inc.

Extrusion North America at Hydro is a wholly-owned subsidiary of Norsk Hydro ASA.

The following publicly-traded company owns 10% or more of the shares in Kaiser Aluminum Corporation: BlackRock, Inc.

## **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................1

II.   STATEMENT OF THE CASE ....................................................4

III.  ARGUMENT...............................................................................4

   A.    Commerce Correctly Determined Appellees' Door
         Thresholds Are Expressly In-Scope......................................6

      1.    Door Thresholds Are Expressly In-Scope and
            Ineligible For Any Enumerated Exclusion ...................6

      2.    The Scope's Express Inclusion of Door Thresholds
            Includes Assemblies.....................................................9

   B.    Commerce Also Correctly Determined Appellees' Door
         Thresholds Are Generally In-Scope ...................................12

      1.    Door Thresholds Are "Parts for Final Finished
            Goods" and "Subassemblies" ....................................12

      2.    "Parts" and "Subassemblies" Are Categorically
            Ineligible for the Finished Merchandise Exclusion ..................19

IV.   CONCLUSION...........................................................................21

## **CONFIDENTIAL MATERIAL OMITTED**

The confidential material omitted from this brief at page 14 consists of confidential information protected by administrative protective order in the underlying agency proceeding in U.S. Court of International Trade Court No. 19-00012.  The confidential material relates to certain testing results submitted confidentially by Plaintiff-Appellee Worldwide Door Components, Inc.

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Silicon Techs. v. United States,*
   334 F.3d 1033 (Fed. Cir. 2003) ........................................................4

*Appleton Papers Inc. v. United States,*
   929 F. Supp. 2d 1329 (Ct. Int'l Trade 2013) ..................................6

*China Custom Mfg. Inc. v. United States,*
   61 F.4th 956 (Fed. Cir. 2023) ..................................................*passim*

*Dupont Teijin Films USA, LP v. United States,*
   407 F.3d 1211 (Fed. Cir. 2005) ......................................................4

*Legacy Classic Furniture, Inc. v. United States,*
   867 F. Supp. 2d 1321 (Ct. Int'l Trade 2012) ...............................6, 7

*Medline Indus., Inc. v. United States,*
   961 F. Supp. 2d 1287 (Ct. Int'l Trade 2014) ..................................6

*Meridian Products, LLC v. United States,*
   890 F.3d 1272 (Fed. Cir. 2018) ................................................*passim*

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States,*
   776 F.3d 1351 (Fed. Cir. 2015) ................................................*passim*

*Whirlpool Corporation v. United States,*
   890 F.3d 1302 (Fed. Cir. 2018) ................................................*passim*

## Regulations

19 C.F.R. § 351.225(k)(1)(A) ..............................................................10

Defendant-Appellant the Aluminum Extrusions Fair Trade Committee ("AEFTC") hereby replies to the August 8, 2023 response brief filed by Plaintiff-Appellees Worldwide Door Components, Inc. ("Worldwide") and Columbia Aluminum Products, LLC ("Columbia" and, collectively, "Appellees"). *See* Resp. Br. of Pl.-Appellees (Aug. 8, 2023), ECF No. 25 ("Opp.").[1]

## I.    <u>INTRODUCTION</u>

Appellees' brief rests on rewritten history.  In Appellees' view, Commerce originally considered just two words in the Orders' general scope description (the express inclusion of "door thresholds") and determined in isolation that Appellees' door thresholds are in-scope.  Then, "once Commerce read the scope language in its entirety and considered all material evidence, it concluded that Appellees' door threshold assemblies are not subject to the scope of the Orders because they satisfy the finished merchandise exclusion." Opp. at 18.  That is not an accurate or complete summation.

In reality, Commerce's Original Scope Ruling considered the general scope language in its entirety and determined that Appellees' door thresholds fall within three separate provisions—each of which forecloses application of the finished merchandise exclusion.  <u>First</u>, Commerce observed that the scope expressly includes

---

[1]    Defined terms retain their meanings from AEFTC's opening brief.  Unless otherwise noted, all emphasis in this brief has been added, and all internal quotations, citations, and alterations have been omitted.

door thresholds "regardless of whether they are ready for use at the time of importation." Appx1002. Commerce thus found not only that door thresholds are expressly in-scope, but also that the finished merchandise exclusion cannot apply. Appx1003–1005. <u>Second</u>, Commerce determined that Appellees' door thresholds are also "subassemblies" and "parts for final finished products," because they are parts for doors that are "assembled after importation (with additional components) to create the final finished product." Appx1001. Because parts or subassemblies are, definitionally, not the finished product into which they are ultimately incorporated, Commerce again determined that the finished merchandise exclusion does not apply. Appx1004.

On appeal, the CIT foreclosed each of Commerce's determinations. At the outset, the court rejected Commerce's reading of "subject extrusions" as inclusive of extrusions in assemblies and, consequently, prohibited Commerce from finding that Appellees' door thresholds are expressly in-scope. *See* Appx5–9; Appx91–95. Commerce disagreed with the court's narrow interpretation of "subject extrusions," which the agency explained was in conflict with this Court's prior holdings. Appx1446–1448; Appx2795–2797 (noting that *Whirlpool Corporation v. United States*, 890 F.3d 1302 (Fed. Cir. 2018), and *Meridian Products, LLC v. United States*, 890 F.3d 1272 (Fed. Cir. 2018), "held that the general scope language covers assemblies"). But, in any event, Commerce continued to find that Appellees' door

thresholds are subassemblies and thus still ineligible for the finished merchandise exclusion. Appx1451, Appx1458; Appx2800, Appx2807. The CIT overturned that determination as well, rejecting both the finding that Appellees' door thresholds are subassemblies and also the proposition that subassemblies cannot be finished merchandise. *See* Appx36–38; Appx113–115.

Back on remand, Commerce explained why the CIT's rulings remained in conflict with the scope's plain language, Commerce's established subassembly framework, and relevant judicial precedents. Appx1602–1604; Appx2946–2947. Left with no options, however, Commerce determined "under protest" that Appellees' door thresholds are excluded from the Orders as finished merchandise. Appx1604; Appx2947; Appx1712; Appx3034. Thus, contrary to Appellees' suggestion that Commerce embraced their position in time, the agency never wavered from its original determination that Appellees' door thresholds are unambiguously in-scope. *See, e.g.*, *Meridian Prods.*, 890 F.3d at 1276 n.3 ("In general, Commerce will reach a remand determination under protest under circumstances where the CIT remands with instructions that dictate a certain outcome that is contrary to how Commerce would otherwise find.").

For the reasons explained in AEFTC's opening brief, below, and in each of Commerce's remand redeterminations, Commerce's Original Scope Ruling should have been sustained.

## II.    <u>STATEMENT OF THE CASE</u>

Appellees' "disagree{ment}" notwithstanding, *see* Opp. at 2, AEFTC stands by its own statement of its own case. The issue in this appeal is not whether Commerce's fourth and final redetermination, issued under protest, was lawful in the abstract. The issue is whether Commerce's original determination was lawful, such that the CIT erred in remanding it to begin with. *See, e.g., Am. Silicon Techs. v. United States*, 334 F.3d 1033, 1037 (Fed. Cir. 2003) (reversing remand order that failed to give Commerce appropriate deference; "A review of the entire administrative record puts before this court both the trial court's remand order . . . and the trial court's acceptance of that specifically limited {redetermination}."); *accord Dupont Teijin Films USA, LP v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005) ("Commerce's determination should . . . be upheld unless it is unsupported by substantial evidence on the record or is not in accordance with law.").

## III.    <u>ARGUMENT</u>

Commerce's Original Scope Ruling correctly, and lawfully, determined that Appellees' door thresholds are unambiguously in-scope.

<u>First</u>, "door thresholds" are expressly covered by the scope, "regardless of whether they are ready for use at the time of importation." Appx1002. Because this Court has previously confirmed that the scope's references to "subject extrusions" include extrusions in assemblies, *see Meridian Prods.*, 890 F.3d at 1280; *Whirlpool*

*Corp.*, 890 F.3d at 1309, Commerce correctly determined (i) that the extrusions in Appellees' door thresholds are expressly subject merchandise, and (ii) that they are ineligible for the finished merchandise exclusion under the scope's plain language, Appx1003–1004.

Second, door thresholds are also subassemblies and parts for doors. Below, Appellees plainly represented that their door thresholds are imported ready for assembly with other components into a door frame. *See, e.g.*, Appx988–989; Appx2826. Record evidence further demonstrated that door thresholds are typically sold to door "pre-hangers," who compile all the component parts of a door unit and sell them assembled for installation into a building. *See, e.g.*, Appx436–442, Appx2193–2194; Appx621; Appx902, Appx2207. Substantial evidence thus amply supported Commerce's determination that Appellees' door thresholds are not themselves finished merchandise, but rather parts in support thereof. Because this Court has confirmed that parts, or subassemblies, are definitionally not finished merchandise, Commerce again correctly determined that the finished merchandise exclusion is inapplicable. *See China Custom Mfg. Inc. v. United States*, 61 F.4th 956, 961–63 (Fed. Cir. 2023); *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 776 F.3d 1351, 1359 (Fed. Cir. 2015).

A.    **Commerce Correctly Determined Appellees' Door Thresholds Are Expressly In-Scope**

  1.    **Door Thresholds Are Expressly In-Scope and Ineligible for Any Enumerated Exclusion**

As with contract interpretation, statutory construction, and the interpretation of most any other written device, the law provides that specific language in a scope governs over general language. Thus, when a scope identifies a specific product as in-scope, that product is in-scope—regardless of whether it could theoretically fall into a general (*i.e.*, nonspecific) exclusion. *See Shenyang Yuanda*, 776 F.3d at 1357 ("{A}s explicitly provided for in the scope language, parts for curtain walls are part of the subject matter of the Orders. This court {thus} discerns no flaw in Commerce's determination that Yuanda's curtain wall parts are within the plain language of the Orders."); *Medline Indus., Inc. v. United States*, 961 F. Supp. 2d 1287, 1291 (Ct. Int'l Trade 2014); *Appleton Papers Inc. v. United States*, 929 F. Supp. 2d 1329, 1335 (Ct. Int'l Trade 2013); *see also Legacy Classic Furniture, Inc. v. United States*, 867 F. Supp. 2d 1321, 1329–30 (Ct. Int'l Trade 2012) (cited in Opp. at 24)[2] ("In a scope determination, the plain language of the order clarifies whether

---

[2]    *Legacy Classic* does not support Appellees' position. As their parenthetical explains, *Legacy Classic* observes that the scope of an order typically "starts with general inclusions and then carves out specific exclusions"; thus, "when a product is generally included in a residual provision but yet specifically excluded from the scope, the specific should trump the general." Opp. at 24 (quoting *Legacy Classic*, 867 F. Supp. 2d at 1330). Door thresholds are not arguably in-scope under some general or residual language; they are specifically, expressly included by name. Nor

the item at issue is unambiguously included or excluded in the scope."; "the specific should trump the general"). Here, "door thresholds" are specifically identified as in-scope, which ends the inquiry. *See* Appx201–202.

But to put a finer point on their inclusion, door thresholds are specifically identified as in-scope "regardless of whether they are ready for use at the time of importation." *Id.* The crux of Appellees' argument—here and in the proceedings below—is that their door thresholds are not subject extrusions, but rather finished merchandise, because they are ready for use at the time of importation. *See, e.g.,* Appx996 ("Columbia maintains that its door thresholds should be excluded from the scope of the Orders because . . . its door thresholds are ready for use at the time of import and require no further processing or manufacturing."); Opp. at 28 ("{T}he threshold assemblies are not parts, but are finished merchandise, ready for use without further processing . . . ."). Because the provision identifying door thresholds as in-scope merchandise expressly disclaims the exclusion that Appellees rely on, the inquiry is once again at an end. *See* Appx1003–1004 ("{W}e find the express inclusion of door thresholds within the scope of the *Orders* (regardless of whether the door thresholds are ready for use at the time of importation) renders the reliance

---

are door thresholds "specifically" excluded from the scope; Appellees merely believe they should fall within a general exclusion. *Legacy Classic* is thus the inverse of the scenario here, and stands for the same interpretive principle that runs throughout the law and that reinforces Commerce's determination: the specific trumps the general.

of Worldwide, MJB, and Columbia upon the finished merchandise exclusion inapposite."); *see also* Appx1004 ("Furthermore, finding door thresholds excluded under the finished merchandise exclusion would render the express inclusion of 'door thresholds' meaningless.").

Furthermore, door thresholds are specifically identified as in-scope without any carve-out for potential exclusions, unlike heat sinks which are listed in the same provision. As Commerce observed in its Original Scope Ruling:

> {T}he same provision of the scope which expressly references "door thresholds" provides an express reference to the heat sinks exclusion:
>
>> Subject extrusions may be identified with reference to their end use, such as fence posts, electrical conduits, door thresholds, carpet trim, or <u>heat sinks (that do not meet the finished heat sink exclusionary language below)</u>.
>
> Thus, in contrast to the heat sinks exclusion referenced in this same section of the scope language, there is no similar language within the scope of the *Orders* which indicates that only those door thresholds that do not meet an exclusion are within the scope of the *Orders*.

Appx1004 (emphasis in original). Put differently, while the scope includes heat sinks <u>unless they meet the criteria for an exclusion</u>, the scope includes door thresholds with no such caveat. The *expressio unius* doctrine thus ends the inquiry a third time. *See Shenyang Yuanda*, 776 F.3d at 1359 ("Under the doctrines of *expressio unius est exclusio alterius* and *noscitur a sociis*, that finished windows with glass are excluded by name means that walls with glass are necessarily included, leaving aside that curtain walls are also specifically included by name.").

In sum, Commerce's Original Scope Ruling did not improperly rely on a "snippet" of inclusionary scope language, as Appellees contend. *See* Opp. at 23. Rather, Commerce relied on specific language in the Orders demonstrating (1) that door thresholds are expressly in-scope, (2) that the finished merchandise exclusion does not apply, and (3) that where Commerce intended for specific examples of in-scope merchandise to be subject to an exclusion, it said so. Three different interpretative principles thus support, and indeed compel, Commerce's original determination that Appellees' door thresholds are expressly in-scope and ineligible for the finished merchandise exclusion.

### 2. The Scope's Express Inclusion of Door Thresholds Includes Assemblies

That Appellees' door thresholds are assemblies is irrelevant. Appellees concede that door thresholds composed entirely of aluminum extrusions are necessarily in-scope. *See* Opp. at 27–28 (arguing Appellees' door thresholds are "comprised of both extruded and non-extruded aluminum parts, unlike 'subject aluminum extrusions' covered by the Orders"); *see also* Appx16 (CIT agreeing with Appellees; "{A}s the court has explained, the scope language expressly includes door thresholds that are 'subject extrusions' while not addressing specifically door thresholds that are not themselves aluminum extrusions."). But they contend that door threshold assemblies are excluded, or at least excludable, from the Orders. Opp. at 27. Appellees' proffered distinction between types of door thresholds is one

of their own making, not supported by the scope language, and irreconcilable with this Court's precedents.

First, the general scope language identifying "door thresholds" as in-scope merchandise does not distinguish between types of door thresholds. Appx201–202. But, lest there be any doubt that door threshold assemblies are covered, the subassemblies provision makes clear that extruded aluminum assembled with other components is presumptively subject to the Orders. *Id.* The scope's references to subject "extrusions" thus apply to solo extrusions and to assembled extrusions with equal force.

Second, the underlying petition confirms that door threshold assemblies were intended to be in-scope. *See* 19 C.F.R. § 351.225(k)(1)(A) (providing that, beyond the language of the scope, Commerce may consider the "descriptions of the merchandise contained in the petition pertaining to the order at issue" in making a scope determination). Specifically, the petition explained: "Aluminum extrusions serve in a wide variety of applications. In the construction sector, for example, aluminum extrusions are incorporated into window and door frames and sills, curtain walls, thresholds, and gutters." Appx1002. This language could not be clearer that

10

aluminum extrusions "incorporated into" door sills and thresholds were specifically intended to be in-scope.[3]

Third, as AEFTC discussed at length in its opening brief, this Court has examined the general scope language of these Orders specifically, and concluded that it refers to both solo and assembled extrusions—even where assemblies are composed of significant non-aluminum materials. *See Shenyang Yuanda*, 776 F.3d at 1357 ("Curtain wall units . . . contain aluminum extrusions. That Yuanda's products are called 'curtain wall units,' rather than 'aluminum extrusions' does not preclude them from the scope since they otherwise meet the physical description of the subject merchandise."). Because the "general scope language unambiguously includes aluminum extrusions that are part of an assembly," Appellees' proffered carve-out for door threshold assemblies is untenable. *Whirlpool Corp.*, 890 F.3d at 1309 ("The CIT determined that the term 'extrusion' is not defined in the general scope language so as to include a good simply because an extruded aluminum component is present within a good consisting of an assembly. . . . This conclusion is incorrect.").

---

[3] It bears repeating that Appellees also understood their door threshold assemblies would be in-scope. In the proceedings below, Columbia wrote the U.S. International Trade Commission regarding the anticipated impact the "pending anti-dumping petition regarding . . . Chinese aluminum extrusions" would have on its door thresholds, which it described as "mainly comprised of plastic, PVC and composite materials." Appx2253.

\*      \*      \*

At bottom, because the scope of the Orders expressly covers both entirely-aluminum door thresholds and the extruded aluminum in door threshold assemblies, there is no lawful way to interpret door thresholds containing extruded aluminum as out-of-scope. Commerce's Original Scope Ruling should have been sustained on these grounds alone.

## B.    Commerce Also Correctly Determined Appellees' Door Thresholds Are Generally In-Scope

### 1.    Door Thresholds Are "Parts for Final Finished Goods" and "Subassemblies"

The above principles further demonstrate that Commerce did not need to—and indeed did not—rely on a "snippet" of inclusionary language to determine that Appellees' door thresholds are in-scope. In addition to finding that the scope expressly includes door thresholds "with reference to their end use," Commerce found Appellees' door thresholds are also "parts for final finished products that are assembled after importation" and "subassemblies." Appx1001–1002 ("{W}e find that the aluminum extruded components of {Appellees'} door thresholds may be described as parts for final finished products, *i.e.*, parts for doors, which are assembled after importation (with additional components) to create the final finished product{.}"); Appx1002 ("Additionally, we find that the door thresholds, which constitute aluminum extrusion components attached to non-aluminum extrusion

12

components, may also be described as subassemblies pursuant to the scope of the Orders."); *cf. Shenyang Yuanda*, 776 F.3d at 1357 ("The Orders include (1) subject aluminum extrusions described at the time of importation as parts for final finished products that are assembled after importation, including curtain walls, (2) aluminum extrusion components that are attached (*e.g.*, by welding or fasteners) to form subassemblies (*i.e.*, partially assembled merchandise), and (3) aluminum extrusions that are identified with reference to their end use.  Each of these three categories applies to curtain wall units.").

As discussed in AEFTC's opening brief, those findings were supported by substantial evidence.  In the proceedings below, Appellees confirmed that their door thresholds are parts for assembly or installation into a larger whole.  Worldwide argued to Commerce, for example, that "upon entry, its products contain all the necessary components for installation within a door frame, or residential or commercial building," Appx988, and that "a product may meet the finished merchandise exclusion regardless of whether the merchandise may be incorporated with further components after importation," Appx989.  Columbia similarly represented that its door thresholds are designed to "fit standard door unit lengths," Appx982; Appx1460, and argued that the "finished merchandise exclusion is not inapplicable just because a product is used in conjunction with other products," Appx2826.

Worldwide also provided a "report from a testing laboratory documenting how the threshold assemblies are mounted, in their imported form, for final use." Opp. at 8; *see also* Appx1459.  Underscoring that the final product is not a door threshold, but rather a door, what Worldwide's report [

**Discussion of testing results**

].  *See* Appx332–398 (submitted to Commerce as "Worldwide Door Thresholds Testing Results," but reciting that "[ **Discussion of testing results**


]"); *see also* Appx904, Appx2209 ("{O}nce BMC assembles a prehung door, the finished product must be tested to ensure that it meets the relevant building codes . . . the product that is tested is the entire door unit, *i.e.*, the finished product, not the individual components, such as thresholds.").  Indeed, numerous industry sources explained that the vast majority of door thresholds are sold to door "pre-hangers," who "purchase various parts for doors, such as door panels, door frames, hinges, glass, thresholds, etc. and assemble these various components into a finished prehung entry door unit." Appx902, Appx2207; *see also* Appx621; Appx436–437, Appx2193–2194.  The finished product in the industry is thus understood to be the "complete door itself." Appx454, Appx2215.

Appellees' door thresholds thus fit squarely within Commerce's subassembly framework.  *See* Appx2830 ("{O}ur analysis considers whether the assembly at

issue is itself the final finished product or an intermediary product."); Appx1460 (defining a subassembly as "merchandise which is designed for the sole purpose of becoming part of a larger whole" and finding Appellees' door thresholds "are intermediary products that require incorporation in a downstream product to function"); *see also China Custom Mfg.*, 61 F.4th at 960, 963 (affirming that solar panel mounts are subassemblies "because the mounts are designed to be part of a downstream final product" and do not "perform a function independent of the complete solar panel mounting system"); *Shenyang Yuanda*, 776 F.3d at 1358 (affirming that units for curtain walls "are designed to be attached to other units" and thus are subassemblies).

Realizing now the consequence of their admissions—*i.e.*, that Appellees' descriptions of their door thresholds confirm they are subassemblies designed to be part of a door—Appellees make three arguments to try and walk them back. None has merit.

First, Appellees contend their door thresholds contain "multiple and significant non-aluminum and non-extruded components." Opp. at 7. But neither the scope nor any relevant precedent suggests that the amount of extruded aluminum in an assembly determines whether it is finished merchandise. To the contrary, this Court has specifically upheld a subassembly determination where the product at issue was composed of significant non-aluminum parts. *See Shenyang Yuanda*, 776

F.3d at 1356, 1359 (affirming that curtain wall units, which are glass exterior walls merely framed by aluminum, are subassemblies subject to the Orders). And the scope itself renders any such consideration irrelevant: however many components are incorporated into an assembly, only the extruded aluminum is subject to the Orders. Appx974.

Second, Appellees contend their door thresholds must be finished merchandise because someone else's door thresholds can be purchased at Lowe's. See Opp. at 9–10, 29. Evidence concerning another manufacturer's door thresholds is of limited, if any, relevance.[4] But Appellees' argument fails to move the needle in any event. Selling a part through different channels of distribution does not transform the part into a complete final finished product. In other words, the fact that parts might be individually sold does not make them "finished." See Final Results of Second Redetermination Pursuant to Court Remand, *Meridian Prods., LLC v. United States*, No. 13-00246 (Ct. Int'l Trade May 15, 2019), ECF No. 88-1, at 23, 30 (noting the scope's "clear distinction" between "parts for final finished

---

[4]    Appellees' reliance on another manufacturer's door thresholds is disingenuous. In response to evidence that many door thresholds require cutting or sizing before installation, *see, e.g.*, Appx437, Appx2194; Appx454, Appx2215, Appellees have repeatedly argued that it would be improper to consider other thresholds in the context of their scope request, *see* Opp. at 29. Appellees also omit that the Lowe's receipt on record was submitted to demonstrate that even door thresholds sold individually as replacement parts often require cutting. *See* Appx424, Appx481–488; Appx2179, Appx2256–2263.

16

products" and "the final finished product itself," and finding that appliance handles are merely "components, or subassemblies" of finished appliances); *see also* Appx453–455 ("The customers in the remodeling segment of the market are principally retail stores such as Home Depot and Lowe's that sell the component <u>parts</u> for completing the door assembly as part of the remodel."). Indeed, if unit sales were enough to qualify for exclusion, every replacement part would be transformed into finished merchandise.

<u>Third</u>, Appellees continue to argue their door thresholds are "finished" because they are ready for installation without "further finishing or manufacturing, such as cutting or punching." Opp. at 6, 8–9, 15, 28, 29. But Commerce and this Court have rejected that very argument. The scope excludes "finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry . . . ." Appx974. Appellees contend that if their merchandise is fully and permanently assembled, it must be "finished." *See, e.g.*, Opp. at 19 ("Appellant's argument ignores uncontested material record evidence demonstrating that threshold assemblies comprised of both extruded and non-extruded aluminum parts . . . are fully assembled at the time of entry, complete with all of the necessary components to be ready for installation within a door frame, or residential or commercial building without any further finishing or fabrication."). But that is not correct, as this Court has now repeatedly explained:

17

> We have interpreted the Orders' scope on multiple occasions, and two of our prior opinions are relevant here. In the first case, we considered the Orders' scope as to the finished merchandise exclusion. There, the <u>plaintiffs argued that their curtain wall units qualified for the finished merchandise exclusion because each unit was fully and permanently assembled and completed upon entry into the United States.</u> *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 776 F.3d 1351, 1358 (Fed. Cir. 2015) (*Shenyang I*). <u>Commerce disagreed</u>, finding that the curtain wall units were not a complete product upon entry and instead were designed to be attached to other units to eventually form a completed curtain wall. . . . <u>We affirmed</u>, holding that "a part or sub-assembly, here a curtain wall unit, cannot be a finished product." *Id.*

*China Custom Mfg.*, 61 F.4th at 959; *see also id.* at 962 ("The Orders exclude finished merchandise <u>containing</u> aluminum extrusions as parts that are fully and permanently assembled, not the parts themselves." (emphasis in original)).

The evidentiary record, Commerce's precedents,[5] and this Court's affirmations thus uniformly support Commerce's determination that Appellees' door thresholds are subassemblies and parts of finished doors.

---

[5] Appellees do not name the "previous scope rulings and court decisions" they cited to Commerce with good reason: they predate this Court's relevant decisions and Commerce's subsequent framework. *See* Opp. at 11 (arguing "Worldwide also cited previous scope rulings and court decisions in which AEFTC and Commerce had applied a two-part test to determine if the finished merchandise exclusion applied," including whether "the product is fully and permanently assembled and completed at the time of entry such that it requires no further finishing or fabrication after importation"); *but see* Appx988–989 (illustrating that Worldwide relied on an outdated framework applied between 2012 and 2016).

### 2. "Parts" and "Subassemblies" Are Categorically Ineligible for the Finished Merchandise Exclusion

Having reasonably determined that Appellees' door thresholds are subassemblies and parts for doors, Commerce correctly determined that the finished merchandise exclusion cannot apply. As AEFTC explained in its opening brief, this Court's precedents establish that subassemblies and parts are categorically ineligible for the finished merchandise exclusion. *See Shenyang Yuanda*, 776 F.3d at 1358 ("A part or subassembly, here a curtain wall unit, cannot be a finished product."); *see also id.* at 1359 ("{T}he CIT correctly determined Yuanda's curtain wall parts are not finished merchandise because it is nonsensical to construe 'parts for ... curtain walls' to mean finished merchandise.").

Appellees' proffered distinctions are understandably weak. *See* Opp. at 30–35. They contend that, in applying this Court's precedents, AEFTC focuses predominantly on the law and devotes little discussion to the "facts involved in this appeal." *Id.* at 30. That is correct, because this case is governed by settled law, and the "distinguishing" facts that Appellees offer are irrelevant.

To begin with, Appellees contend that *Shenyang Yuanda* and *China Custom Manufacturing* are distinguishable because the products at issue in those appeals had no independent consumptive purpose, whereas "threshold assemblies are available for purchase at retail stores to be directly installed by consumers to the floor, not into a downstream system or product." *Id.* at 30–31. There are several problems with

that assertion. <u>First</u>, and as noted above, there is no evidence that Appellees'
thresholds are available at retail stores or for installation directly to the floor, and the
record suggests otherwise. *See* Appx988 (representing Appellees' door thresholds
are installed into door frames); Appx454, Appx2215 (stating door threshold
"customers are predominantly pre-hung door manufacturers that provide the
completed door"). <u>Second</u>, and in any event, the fact that you can buy a part at
Lowe's does not make it "finished"—any number of replacement parts can be
purchased at Lowe's. <u>Third</u>, however a door threshold is ultimately installed, it
remains a supporting part for a door frame or door. *Cf. China Custom Mfg.*, 61 F.4th
at 961 ("{T}he mounts have no use outside of the specific solar panel mounting
system{.}"). <u>Fourth</u>, mere disagreement with Commerce's determination cannot
support reversal. "The question of whether a product meets the unambiguous scope
terms"—here, the subassembly provision—"presents a question of fact reviewed for
substantial evidence." *Whirlpool Corp.*, 890 F.3d at 1308. Thus, that Appellees or
the CIT "arrived at conclusions different from Commerce's factual findings is
immaterial to the extent that Commerce's original scope ruling is reasonable and
supported by substantial evidence," *Meridian Prods.*, 890 F.3d at 1281, and it was.

Appellees' attempts to distinguish *Meridian Products* and *Whirlpool
Corporation* fare worse—primarily because Appellees do not engage with the
principle for which AEFTC actually cited them. *Meridian Products* and *Whirlpool*

*Corporation* establish, in relevant part, that the scope's references to "subject extrusions" include extrusions in an assembly. *See Meridian Prods.*, 890 F.3d at 1278, 1280; *Whirlpool Corp.*, 890 F.3d at 1309 (finding the "general scope language unambiguously includes aluminum extrusions that are part of an assembly"). These are unequivocal findings of law, divorced from any facts. AEFTC does not offer *Meridian Products* or *Whirlpool Corporation* for the proposition that the finished merchandise exclusion does not apply. *See* Opening Br. of Def.-Appellant (June 29, 2023), ECF No. 22, at 19–21. Consequently, Appellees' contention that they are "of limited guidance" on that point is uncontroverted and irrelevant. *See* Opp. at 32–33.

In sum, and as this Court has also previously found, Appellees' attempts to sidestep binding legal conclusions on immaterial factual grounds should be rejected. *See, e.g.*, *China Custom Mfg.*, 61 F.4th at 961 ("CCM argues that our holding in *Shenyang I* was limited to the curtain wall units at issue there and cannot be applied to the solar panel mounts at issue here. We disagree. Our holding in *Shenyang I* was based on the language of the Orders.").

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, and those in its opening brief, AEFTC respectfully requests that the Court reverse the CIT's remand orders and reinstate Commerce's original scope determination.

Respectfully submitted,

*/s/ Robert E. DeFrancesco, III*
Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Enbar Toledano, Esq.
Elizabeth S. Lee, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
202-719-7000

*Counsel to the Aluminum Extrusions*
*Fair Trade Committee*

Dated: August 29, 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 23-1532, 23-1534

**Short Case Caption:** Worldwide Door Components, Inc. v. United States; Columbia Aluminum Products, LLC v. United States

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes ___4,833___ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 08/29/2023

Signature: /s/ Robert E. DeFrancesco, III

Name: Robert E. DeFrancesco, III

Save for Filing